United States Court of Appeals,

Eleventh Circuit.

No. 94-4375.

UNITED STATES of America, Plaintiff-Appellee,

v.

Norman N. WRIGHT, Defendant-Appellant.

Sept. 12, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-8087-CR-EBD, Edward B. Davis, Judge.

Before COX, Circuit Judge, HILL and REYNALDO G. GARZA [*], Senior Circuit Judges.

REYNALDO G. GARZA, Senior Circuit Judge:

This appeal presents us with the opportunity to revisit the rule of consistency. In 1988 this Court, sitting in full, overruled the rule of consistency in this Circuit.[1] However, where this Court was faced with inconsistent jury verdicts, this panel is faced with an inconsistency between a judgment of acquittal and a jury verdict of guilty. Because we find that our prior decision in *United States v. Andrews,* controls this situation, we affirm.

Factual Background

Pursuant to a tip, the DEA established surveillance on an apartment complex in Boynton Beach. Appellant Norman Wright, driving a red Nissan, along with Temeka Perry, his girlfriend, arrived at the complex to pick up a confidential informant (CI).

[*]Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]*United States v. Andrews,* 850 F.2d 1557 (11th Cir.1988) (*en banc* ), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989).

Appellant drove to a Miami residence and picked up "Tony the Cuban", the alleged seller of cocaine. The four individuals drove to an apartment located in a community with security gates. The car remained there for approximately fifteen minutes.

Tony the Cuban obtained the cocaine and sold it to Appellant and the CI. After returning Tony the Cuban to his Miami residence, Appellant drove the CI to a house in Delray Beach and then drove to a Winn-Dixie with Perry. The couple entered the store and purchased carpet freshener and fabric softener. Upon returning to the car, the surveillance team observed movement in the car. Perry exited the car and threw a plastic bag containing a near empty roll of duct tape and a steel wool pad into a nearby trash bin. Appellant placed something in the trunk of the car.

Appellant and Perry were ultimately stopped. Responding to questions, Appellant first told the officers that he was going to Delray Beach and then told them he was heading to Tallahassee. The officers utilized a narcotics detector K-9 dog. The dog alerted the officers to the driver's door and the trunk. In the trunk they found one-quarter of a kilogram of cocaine wrapped in duct tape and sheets of fabric softener.

While seated in the police car, Appellant and Perry spoke to each other. Their conversation, which was recorded, was later introduced at trial. After Appellant was read his rights, he admitted he knew of the cocaine in the car, and that he had obtained it from Tony the Cuban for the purpose of converting it into crack and reselling it.

Appellant and Perry were indicted for conspiracy to possess

cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 846. The grand jury also charged Tony the Cuban, who was never arrested. At the close of the government's case, the district court granted Perry's motion for acquittal, and denied Appellant's motion for acquittal. At this time there was some discussion about a defense witness who was not served with a subpoena because he was in state custody. Appellant, however did not proffer the testimony of this witness. Because there was no evidence that the witness could be obtained within a reasonable time, and Appellant conceded that his testimony would be the same as the absent witness, the district court did not grant a continuance or a writ of habeas corpus *ad testificandum.* Appellant then took the stand in his own defense. After Appellant testified, the defense rested. Appellant failed to renew his motion for an acquittal at the close of all the evidence.

The jury returned a verdict of guilty. The district court denied Appellant's motion for a new trial and sentenced Appellant to 120 months of imprisonment, three years of supervised release, and a special assessment of $100. This appeal ensued.

### Discussion

Appellant attacks his conviction on two grounds. First, Appellant contends the district court erred by failing to grant a continuance that would enable Appellant to secure the presence of a defense witness. Appellant argues this error operated to deny him his right to present witnesses on his behalf. Second, Appellant contends the evidence was insufficient to support his

conviction.  Appellant argues a conviction of conspiracy requires evidence that two or more individuals conspired; because Appellant's co-conspirator was acquitted, Appellant asserts the evidence is insufficient to support the conviction.

### I. Defense Witness

During the first day of trial, Appellant informed the court below that one of his prospective witnesses, Albert Wright, was in state custody on a traffic charge in Marion County.  The witness was allegedly present in the apartment when the CI persuaded Appellant to participate in the events leading up to his indictment.  The witness was incarcerated for a traffic offense two weeks prior to trial.  As a result of the incarceration and a mixup concerning service of a subpoena, the witness was never served.  Appellant was not aware of this situation until the day of trial.

Appellant asked the court "to permit me to make the necessary arrangements to have him transported down here."  After a recess, Appellant acknowledged that he needed a court order to secure the presence of the witness.  The district court did not think that it could obtain the witness from the state authorities within a reasonable amount of time.[2]  In fact, Appellant conceded that even with a court order it would take a day or two to obtain the witness.  The court asked Appellant if there was any other way to get the testimony.  Appellant stated, "Well, I'm most likely to have my client testify which would, in essence, be the same testimony.  Would say the same thing."  Because Appellant would

---

[2]The district court stated that it took about one to two weeks to obtain a prisoner from the state system.

supply the same testimony as the absent witness, and the court would not be able to obtain the witness within a reasonable amount of time, the court "denied" Appellant's motion.[3]

Appellant insists he is entitled to a reversal as a result of the district's failure to order the production of the witness and the district court's failure to continue the trial until production of the witness was possible. Appellant never formally requested a continuance, nor formally petitioned the court for a writ of habeas corpus *ad testificandum.* However, because the court below understood the requests made by Appellant, we will construe the discourse between the court and Appellant as a request for a continuance and a petition for a writ of habeas corpus *ad testificandum.* For purposes of clarity we will address each separately.

A. Writ of habeas corpus *ad testificandum*

"The proper method for securing a prisoner's presence at trial is a petition for a writ of habeas corpus *ad testificandum.*"[4] The denial of a petition for a writ of habeas corpus *ad testificandum* is committed to the sound discretion of the district court; the district court's ruling is subject to reversal on appeal only upon a showing of abuse of that discretion.[5] A district court should consider several factors in determining

---

[3]The district court did not formally deny the request. Instead the court concluded the matter by stating, "I'm not aware of a way that we can [obtain the witness]. If you can think of anything that we can do, I'll make an effort."

[4]*United States v. Rinchack,* 820 F.2d 1557, 1567 (11th Cir.1987).

[5]*Id.*

whether to issue the writ. After the defendant shows that the presence of the witness is necessary for an adequate defense, the district court should consider

> whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted.[6]

We affirm the district courts denial of the writ because Appellant failed to show that the defense witness was necessary for an adequate defense; Appellant failed to show whether the prisoner's presence would substantially further the resolution of the case.

Appellant contends Albert was a critical witness that would have substantiated Appellant's defense of entrapment. However, Appellant failed to proffer the witness's testimony to the district court. In *Rinchack* this Court found the lack of a proffer sufficient grounds to deny a writ of habeas corpus *ad testificandum.*

> The trial transcript from the trial reflects that [the defendant's] request for the presence of his two codefendants was not accompanied by any offer of proof as to the testimony they might be expected to offer ... [T]he burden of showing necessity and relevance is on the defendant ... [T]he failure to carry this burden is a legitimate basis to deny a request to procure the presence of a witness.[7]

The only indication of what might be expected of the witness was the statement that Appellant would testify, and the witness's testimony would, "in essence, be the same testimony, that they would say the same thing." This does not constitute a proffer. A

---

[6]*Ballard v. Spradley,* 557 F.2d 476, 480 (5th Cir.1977).

[7]*Rinchack,* 820 F.2d at 1568.

proffer details the facts to which the witness is expected to testify.[8] The mere statement that the absent witness "would say the same thing," without detailing what Appellant planned to state, is not sufficient to show that the witness is necessary to an adequate defense of Appellant's case.

Appellant's own testimony did not support his entrapment defense. Appellant's underlying reason for the initial rejection of the CI's offer was based on his lack of money.[9] Once the CI told Appellant that he would make a profit from the cocaine when it was resold, Appellant agreed. Appellant's own testimony reveals that it took only ten minutes for Appellant to agree to front the money. Furthermore, Appellant admitted he had been convicted in state court for possession of marijuana with intent to sell approximately two years prior to the drug transaction involved in the appeal *sub judice.* Appellant's own testimony does not support a defense of entrapment.[10] Even considering Appellant's statement,

_____

[8]*See, e.g., United States v. Valenzuela—Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (In finding no violation of the defendant's Sixth Amendment right to compulsory process, the Supreme Court stated "[the defendant] must at least make some plausible showing of how their testimony would have been both material and favorable to his defense."); *United States v. Conder,* 423 F.2d 904 (6th Cir.) (holding that the mere allegation that witnesses would be necessary for "alibi as well as impeachment purposes" was too general a statement), *cert. denied,* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970).

[9]In response to the CI's offer Appellant testified, "I rejected it. I didn't want to deal in that kind of thing. I didn't know too much about it. I didn't exactly cut him off. I just let him know I just really didn't have enough money to waste on something like that." Recapping, Appellant testified, "I only have so much money. I only got part of my lawsuit. I don't want to spend it on that kind of stuff...."

[10]*See generally Jacobson v. United States,* 503 U.S. 540, 549-51, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992) (stating

"he would say the same thing" as a proffer does not support his defense of entrapment, and therefore does not satisfy Appellant's burden to show that the witness was necessary for an adequate defense.

B. Continuance

The decision whether to continue a trial is committed to the sound discretion of the district court.[11] To determine whether a denial of a continuance is arbitrary or unreasonable, we consider:

> (1) the diligence of the defense in interviewing the witness and procuring his testimony; (2) the probability of obtaining the testimony within a reasonable time; (3) the specificity with which the defense was able to describe the witness's expected knowledge or testimony; and (4) the degree to which such testimony was expected to be favorable to the accused, and the unique or cumulative nature of the testimony.[12]

Appellant's claim fails several of these criteria. First, Appellant did not describe the witness's expected knowledge or testimony at all. As discussed above, Appellant merely stated the witness's testimony would be the same as his, without detailing what his testimony would be. Second, Appellant's testimony was not favorable to his defense of entrapment. Therefore, even had Appellant provided the substance of the absent witness's testimony by providing what he, the Appellant, would have said on the stand, it would likewise be unfavorable to his entrapment defense, as well

---

"where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition").

[11]*United States v. Cross,* 928 F.2d 1030, 1048 (11th Cir.), *cert. denied,* 502 U.S. 985, 1060, 112 S.Ct. 594, 941, 116 L.Ed.2d 618 and 117 L.Ed.2d 112 (1991).

[12]*Id.*

as cumulative of Appellant's own testimony.  Third, Appellant presented no evidence that the procurement of the witness could be handled in a reasonable amount of time.  Because Appellant failed to show the district court abused its discretion, we affirm the court's ruling.

## II. Sufficiency of the Evidence

Appellant contends the evidence was insufficient to support a conviction of conspiracy to possess with the intent to distribute cocaine, as there was no one with which to conspire.  His argument is summarized as follows:  The confidential informant cannot be considered for purposes of establishing a conspiracy because he is an informant;  Tony the Cuban, the seller, merely sold cocaine to Appellant in a one-time, buy-sell transaction;  finally, Temeka Perry, Appellant's girlfriend, was acquitted by the district court of participation in the conspiracy upon a finding that there was insufficient evidence to support her role in the conspiracy.

Appellant failed to move for a judgment of acquittal at the close of his case.  Accordingly, we restrict our review of his claims to whether his conviction resulted in a manifest miscarriage of justice.[13]  "Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt,"[14] or if "the evidence on a key element of the offense was so tenuous that a conviction would

---

[13]*United States v. Jones,* 32 F.3d 1512, 1516 (11th Cir.1994).

[14]*United States v. Wright,* 427 F.2d 1179, 1180 (5th Cir.1970).

be shocking."[15]

We agree with Appellant that it takes at least two to conspire neither of which may be government agents or informers.[16] Any agreement between the CI and Appellant to buy and sell cocaine can not form the basis of the conspiracy. The government contends, under the narrower "manifest miscarriage of justice" standard, the conspiracy may stand nevertheless because there is evidence that Tony the Cuban conspired with Appellant. The record, however, is devoid of any evidence that, beyond a single buy-sell transaction, Tony the Cuban and Appellant conspired to distribute cocaine.

> To begin with, we must note that the mere fact of the purchase by a consumer of an amount of an illegal substance does not make of the seller and buyer conspirators under the federal statutes. It is well settled that the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement.[17]

The CI did not testify; Tony the Cuban was not apprehended. The record reveals little conversation between Tony the Cuban and the Appellant, and no evidence that an actual agreement was consummated. In short, the evidence is insufficient to infer an agreement, a conspiracy, between Appellant and Tony the Cuban based upon their one-time transaction.

Reluctantly, we turn to whether the evidence supports a

---

[15]*United States v. Tapia,* 761 F.2d 1488, 1491-92 (11th Cir.1985).

[16]*United States v. Elledge,* 723 F.2d 864 (11th Cir.1984); *United States v. Tombrello,* 666 F.2d 485, 490 n. 3 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982).

[17]*United States v. Brown,* 872 F.2d 385, 391 (11th Cir.) (citations omitted), *cert. denied,* 493 U.S. 898, 110 S.Ct. 253, 107 L.Ed.2d 203 (1989).

conspiracy between Temeka Perry and Appellant. The question becomes whether the jury can consider Perry as a co-conspirator, in spite of the fact that the judge dismissed her case, if the jury found the evidence sufficient to show a conspiracy between Appellant and Perry. Until recently, this Circuit followed the rule of consistency in conspiracy cases: "where all but one of the charged conspirators are acquitted, the verdict against the one will not stand."[18] In 1988 the rule of consistency was overruled by this Court, sitting *en banc,* in *United States v. Andrews.*[19] "Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirator are acquitted, the verdict against the one can stand."[20] The *Andrews* Court was faced with inconsistent jury verdicts of conspiracy. In the appeal *sub judice,* we are faced with an acquittal by the district court of one co-conspirator, and a verdict of guilty by the jury of the other co-conspirator. Appellant contends that because the district court found insufficient evidence of Perry's guilt Appellant's conviction should be overturned as there is no one left with which Appellant could conspire. The government, on the other hand, urges us to extend *Andrews* to this situation.

We feel compelled to take the next logical step on this path of jurisprudence. The *Andrews* Court extended the rationale of

---

[18]*Herman v. United States,* 289 F.2d 362, 368 (5th Cir.), *cert. denied,* 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).

[19]850 F.2d 1557 (11th Cir.1988) (*en banc* ), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989).

[20]*Id.* at 1559.

*United States v. Powell,*[21] which re-affirmed the reasoning of *Dunn v. United States,*[22] to inconsistent conspiracy verdicts rendered by the same jury. The traditional complaint is that if the jury acquitted one of the two co-conspirators, the remaining co-conspirator must also be absolved as there is no one else with which he or she could have conspired. "There are, however, explanations for this inconsistency that have nothing to do with whether [the acquitted co-conspirator] actually conspired with [the convicted co-conspirator] to commit a crime."[23] The inconsistent verdicts may be " "the result of mistake, or lenity' "[24]—no reason to vacate an otherwise valid conviction. " "[T]he best course to take is simply to insulate the verdicts from review on this ground.' "[25] With few exceptions, " "once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment.' "[26] This reasoning is equally applicable to the situation before us today.[27]

---

[21]469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

[22]284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

[23]*Andrews,* 850 F.2d at 1561.

[24]*Id.* at 1562 (quoting *Powell,* 469 U.S. at 68, 105 S.Ct. at 479).

[25]*Id.* (quoting *Powell,* 469 U.S. at 69, 105 S.Ct. at 479).

[26]*Id.* at 1561 (quoting *Powell* 469 U.S. at 67, 105 S.Ct. at 478).

[27]We acknowledge that the *Andrews* Court, in a footnote, stated, "a not guilty verdict ... is not the same thing as a finding of insufficient evidence to allow a conviction." *Id.* at 1562 n. 15. Nevertheless, we see no reason not to apply *Andrews* to that situation. The majority in *Andrews* was merely responding to the dissent's assertion that *Hartzel v. United States,* 322 U.S. 680, 681 n. 1, 64 S.Ct. 1233, 1234 n. 1, 88 L.Ed. 1534

A district court, like a jury, may make a mistake; although federal judges, they are not infallible. The Supreme Court recognized this fact in *Harris v. Rivera.*[28] Addressing the constitutionality of inconsistent verdicts in a criminal bench trial, the Court considered different possibilities for the inconsistent rulings. For example, in a larceny case the judge may make an error of law and conclude that a defendant should not be found guilty without evidence that he was to share in the proceeds of the larceny. "Even the unlikely possibility that the acquittal is the product of lenity that judges are free to exercise at the time of sentencing but generally forbidden to exercise when ruling on guilt or innocence," would cause inconsistent results without creating a constitutional violation.[29] While the Harris court found this later possibility unlikely, we find it more likely now, as judges are *not* as free to exercise lenity under the Sentencing Guidelines. In short, judges may grant a judgment of acquittal for reasons having nothing to do with guilt or innocence—for example, based on a mistake of law or lenity—just as juries may. "There is no reason—and surely no constitutional requirement—that such an

---

(1944) controlled. *Hartzel,* a pre-*Powell* case, in a footnote, applied the rule of consistency to a scenario similar to the one before us. Because we find *Powell* and our Circuit's application in *Andrews* to have effectively abolished the rule of consistency, we attach little substance to the footnote in *Andrews.* Several courts addressing the rule of consistency, however, distinguished pre-*Powell* cases on this ground. *See, e.g., United States v. Hughes Aircraft Co., Inc.,* 20 F.3d 974, 977 n. 4 (9th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994); *United States v. Bucuvalas,* 909 F.2d 593, 597 (1st Cir.1990).

[28]454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981).

[29]*Id.* at 348, 102 S.Ct. at 465.

error pertaining to the case against [Perry] should rebound to the benefit of [Appellant]."[30]   Accordingly, inconsistent verdicts, whether provided by juries or judges, are not subject to reversal merely because they are inconsistent.

Was the evidence sufficient to support a conspiracy between Perry and Appellant?  We think yes.  Appellant has not convinced us that his conviction should be reversed.   Under the manifest miscarriage of justice standard, reversal is required only if the record is devoid of evidence pointing to his guilt or the evidence of a key element is so tenuous that a conviction would be shocking.

A review of the record reveals sufficient evidence to support Appellant's conviction.  Perry was in the front seat of the Nissan with Appellant from the moment surveillance was established.  The package of cocaine was placed in the front seat with Appellant and Perry.  Perry and Appellant entered the Winn-Dixie together to purchase carpet freshener and fabric softener;  materials known to be used to mask the odor of cocaine.  Perry and Appellant returned to the car, whereupon the surveillance team witnessed some upper-body movement in the front seat.  The jury could have reasonably inferred that Perry and Appellant wrapped the cocaine with these materials.  Perry then disposed of the near empty roll of duct tape, and Appellant placed something in the trunk.  When stopped by the officers and asked where they were going, they gave inconsistent destinations.  The officers ultimately found a package of cocaine surrounded by fabric softeners and wrapped in duct tape in the trunk of the car.  Most telling, however, was the recorded

---

[30]*Id.* at 347, 102 S.Ct. at 465.

conversation between Appellant and Perry as they sat in the officer's car. When the narcotics dog was taken to the trunk, she exclaimed: "They know." "That's it." "Just say I don't know anything, Norman." Appellant responded, "I'll tell them you don't know." Appellant then told Perry to tell the officers that the package containing the cocaine belonged to someone else. Based on this evidence a jury could have reasonably found that Perry and Appellant willingly conspired to possess cocaine with the intent to distribute.

Accordingly, we AFFIRM Appellant's conviction.