[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 3, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-13882

_____

D.C. Docket No. 06-00466-CR-T-23-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE FERNANDEZ MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 3, 2009)

Before TJOFLAT and CARNES**,** Circuit Judges, and HOOD,* District Judge.

PER CURIAM:

---

*The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

A Middle District of Florida jury found Defendant-Appellant Jorge Fernandez Martinez ("Martinez" or "Defendant") guilty of conspiring to possess with intent to distribute 3,4-methylenedioxymethamphetamine ("MDMA"), marijuana, and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii) (Count 1); possessing with intent to distribute MDMA and cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2); possessing a firearm (revolver) in furtherance of the drug trafficking offense charged in Count 2, in violation of 18 U.S.C. § 924(c) (Count 3); and distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 4). The district court granted Martinez a judgment of acquittal on a fifth charge, possessing a firearm (shotgun) in furtherance of his Count 2 conduct. After accepting the jury's verdicts, the district court sentenced Martinez to concurrent terms of 360 months imprisonment on Counts 1, 2, and 4, followed consecutively by a term of 60 months imprisonment on Count 3. Martinez was also sentenced to supervised release for concurrent periods of 96 months (Count 1), 72 months (Counts 2, 4), and 60 months (Count 3). Martinez appeals both his convictions and sentence on a multitude of grounds.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The investigation into Martinez' criminal activities was assisted by one of his acquaintances, Jeffrey McCann ("McCann"), who became a confidential

2

informant for the Tampa Police Department's drug trafficking investigation unit. Martinez rented a house from McCann. The house, owned by McCann's stepfather, was located at 2919 North 16th Street in Tampa, Florida. McCann expressed concern that Martinez might turn the house into a party house, where visitors would come to consume drugs and engage in sexual acts. McCann admitted to smoking marijuana with Martinez in the house; however, McCann claimed that Martinez' involvement in dealing other drugs, such as cocaine and methamphetamine, and Martinez' practice of keeping firearms in the house, troubled him and he sought to evict Martinez from the property.

In March 2006, McCann reported Martinez to authorities through a law enforcement hotline. Detective Gary Russ ("Detective Russ") contacted McCann, at which time McCann agreed to work as a confidential informant against Martinez. McCann related to Detective Russ that he had seen Martinez dealing cocaine, methamphetamine, ecstasy, and marijuana from the house. He also told Detective Russ that Martinez kept a shotgun at the house. According to McCann, only Martinez and his girlfriend lived in the house. Detective Russ independently confirmed via the electric company that Martinez lived in the house.

In April 2006, Detective Russ directed McCann to purchase methamphetamine from Martinez. Detective Russ frisked McCann before and after he entered the house. Martinez supplied McCann with a small sample of

methamphetamine to pass along because he was running short on supply. McCann was instructed to maintain contact with Martinez but to not do anything illegal. However, he sometimes used marijuana with Martinez without telling authorities. Later, McCann assisted in an independent investigation into Martinez' supplier, Thanh Truong, by twice purchasing ecstasy from Truong. Truong was later convicted in state court and testified against Martinez.

On May 26, 2006, authorities directed McCann to gather information about the layout of Martinez' house and the occupants inside. McCann told police that Martinez and a few other people were in the house with a firearm, a bag, ecstasy, and possibly cocaine or methamphetamine. McCann also told police that Martinez was about to leave with the firearm and drugs. Law enforcement saw Martinez and another man leave the house carrying a package "of some sort." Martinez entered the passenger side of a car waiting in the driveway and drove away. After a few blocks, police stopped the vehicle with Martinez in it after the driver completed a u-turn. On the floor of the passenger side, police found a bag with a .38-caliber revolver protruding from it in plain view, and, after a search, about $860 in cash, a plastic baggie containing ecstasy, and a pill bottle containing cocaine with Martinez' name on the outside. The serial number on the revolver was "obliterated."

As the stop occurred, police applied for a search warrant for the house at

2919 North 16th Street. A judge authorized a search warrant after the vehicle was stopped but before the car was searched. The warrant permitted a search of the house, the curtilage, and any persons or vehicles found there, in order to find methamphetamine, cocaine, drug paraphernalia, firearms, and evidence of sexual battery. A separate investigation occurred concurrently regarding a woman who was allegedly sexually battered multiple times in Martinez' house. The supporting affidavit set forth in detail both the information Detective Russ had learned through McCann and averments from a co-affiant regarding the sexual battery.

While executing the warrant, Police found the house in disarray with drugs and drug paraphernalia scattered throughout. A disassembled shotgun was seen inside a partially-opened closet in the kitchen. Martinez' social security card was found in a room containing most of the drugs, drug paraphernalia, a digital scale with cocaine residue, a cocaine spoon with residue, and a rolled-up dollar bill. Inside the house, police found bags and boxes filled with marijuana, crack cocaine pipes, marijuana pipes, and marijuana cigarette butts, much of which was in plain view.

At the close of all the evidence, the district court heard Martinez' arguments for a judgment of acquittal under Fed. R. Crim P. 29. Specifically, Martinez asked for a judgment of acquittal based on insufficiency of the evidence regarding his possession of the shotgun and revolver, his involvement in a drug trafficking

5

conspiracy, and his possession with intent to distribute MDMA. The district court granted Martinez' motion as to the shotgun, but allowed the remaining counts to proceed to the jury.

Martinez' appeal raises many arguments for the reversal of his convictions or a reduction of his sentence. First, Martinez' argues that the district court should have suppressed evidence from the car because there was no probable cause for the search. Second, Martinez argues that the warrant issued was defective because there was a lack of probable cause and it was overly broad. Third, Martinez argues that the Government's use of McCann as a confidential informant constituted outrageous conduct worthy of acquittal. Fourth, Martinez claims that a letter sent to the presiding judge should have been excluded as part of plea negotiations. Fifth, Martinez argues that the court wrongly excluded two other letters containing exculpatory information. Sixth, Martinez argues the district court's sentence was unreasonable and improperly calculated. Seventh, Martinez objects to the district court's supplemental instructions to the jury after the jury asked whether they must ignore McCann's testimony in light of his admission that he used marijuana. Eighth, Martinez argues the court erred in not allowing him to question McCann about his involvement in a kidnaping while acting as an informant or about a federal investigation for mortgage fraud prior to McCann becoming an informant. Finally, Martinez argues that evidence of his prior

6

convictions for possessing and delivering drugs and the fact that his right to possess a firearm had not been restored was unfairly prejudicial or lacked probative value.

## II. Sufficiency of the Evidence

We review *de novo* a district court's denial of a motion for judgment of acquittal based on sufficiency of the evidence. *United States v. Yates*, 438 F.3d 1307, 1311-12 (11th Cir. 2006). We must determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). In doing so, we view the evidence in the light most favorable to the government and all reasonable inferences and credibility choices are made in favor of the government and the jury's verdict. *Id.*; *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). To support a conviction, the government must prove an agreement between Martinez and one or more other persons to possess with intent to distribute MDMA, cocaine, and marijuana. "If there are only two members of a conspiracy, neither may be a government agent or informant . . . ." *United States v. Arbane*, 446 F.3d 1223, 1228 (11th Cir. 2006). The agreement may be proven circumstantially, using inferences from the alleged participants' conduct or evidence of a scheme. *Silvestri*, 409 F.3d at 1328 (citing *United States v. Tamargo*, 672 F.2d 887, 889 (11th Cir. 1982)).

In this case, the evidence overwhelmingly supports the jury's verdict on the conspiracy count. Martinez argues the government failed to prove his involvement in any conspiracy with "independent evidence." Importantly, he does not dispute the sufficiency of the evidence to support the verdicts on the other counts. The record contains more than enough evidence of a conspiracy between Martinez and Truong, who was not a confidential informant or government agent. *Cf. United States v. Wright*, 63 F.3d 1067, 1072 (11th Cir. 1995) ("record reveals little conversation between [the supplier] and the Appellant, and no evidence that an actual agreement was consummated"). Specifically, there is testimony that Martinez and Truong entered into multiple buy/sell exchanges of drugs. Martinez and Truong also entered into longer term "fronting" transactions. In fact, in one transaction Truong fronted Martinez 2,000 ecstasy pills, which Martinez was to pay for as he dealt the pills. Martinez knew that Truong would give a per pill discount if he bought in bulk, but this required Truong to front the pills to Martinez. Additionally, there is evidence in the record that Martinez and Truong had agreed to divide selling territory within the city. Martinez became upset with McCann when he learned Truong had sold drugs to McCann on his turf. The record contains ample evidence to infer from Martinez' conduct that he had an agreement with Truong to possess drugs, intending to distribute them. There is sufficient evidence to support Martinez' conviction on Count 1. *Jackson v.*

8

*Virginia*, 443 U.S. 307, 313-319 (1979).

## III. Outrageous Government Conduct

A motion alleging a defect in the indictment must be made before trial. Fed. R. Crim. P. 12(b)(3)(A). The government contends and Martinez does not dispute that he failed to seek dismissal of the indictment in the district court on the ground of outrageous governmental conduct, and his appeal of this issue is therefore barred. Martinez would not prevail even were we to reach the merits of his claim. "While the Supreme Court and this Court have recognized the possibility that government involvement in a criminal scheme might be so pervasive that it would be a constitutional violation, that standard has not yet been met in any case either before the Supreme Court or this Court." *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998).

Martinez argues that McCann's reliability is undermined by his use of drugs and involvement in dealing drugs while working as an informant and that the Government's use of McCann as an informant constituted outrageous conduct worthy of acquittal. Outrageous governmental conduct is a defense that focuses on the government's tactics in obtaining a conviction. *Sanchez*, 138 F.3d at 1413. Dismissal of an indictment on the ground that the government engaged in outrageous conduct requires a defendant to show from the totality of the

9

circumstances that the government's conduct and over-involvement "violated that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *United States v. Russell*, 411 U.S. 423, 432 (1973) (quotation marks omitted). The defense can be invoked only in the "rarest and most outrageous circumstances." *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000); *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984). The government may not "instigate the criminal activity, provide the place, equipment, supplies and know-how, and run the entire operation with only meager assistance from the defendant[] . . . ." *United States v. Tobias*, 662 F.2d 381, 386 (11th Cir. 1981) (citing *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978)).

In this case, McCann's involvement as an informant does not constitute outrageous conduct. The investigation into Martinez began when McCann contacted authorities. McCann's admitted use of drugs while working as an informant was unknown to the police at the time of the investigation and was done to avoid detection by Martinez. It can hardly be said that the government instigated McCann's or Martinez' criminal activity or ran any drug operations to catch Martinez. Martinez contends that the Government was simply going along with a plot by McCann against Martinez, but this assertion is not in accordance

10

with the facts presented. Moreover, other more egregious acts, have been found not outrageous. *See United States v. Rogers*, 701 F.2d 871, 872 n.1 (11th Cir. 1983) (agents offered to lower price of drugs, furnish hotel rooms and women to "sweeten the deal"). Martinez' argument that the government's conduct was outrageous fails.

## IV. Motions to Suppress

In reviewing a district court's denial of a motion to suppress, we review its factual findings for clear error and its application of law to those facts *de novo*. *United States v. Acosta*, 363 F.3d 1141, 1144 (11th Cir. 2004). When considering a ruling on a motion to suppress, we construe all facts in the light most favorable to the party prevailing in the district court, here, the government. *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir, 2008). In reviewing a denial of a motion to suppress, we review the entire record, including trial testimony. *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007).

## A. Automobile Search

Martinez' first argument is that the district court should have suppressed evidence from the car because there was no probable cause for the search. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."

*Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003). Here, there is no dispute the car was mobile.

If police have probable cause to believe a container containing contraband will be found in a car, then the police may search the car for the container without a warrant. *California v. Acevedo*, 500 U.S. 565, 580 (1991). Any contraband openly observed in searching for the container is also admissible under the plain view doctrine. *Horton v. California*, 496 U.S. 128, 142, 110 S. Ct. 2301, 2310-11, 110 L. Ed. 2d 112, 126 (1990). Probable cause exists where the totality of the circumstances show a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). When probable cause is based on the statements of a confidential source, factors used to assess the source's usefulness include his veracity and the basis of his knowledge. *Id.* at 1352-53. Independent police corroboration is not a requirement. *Id.* at 1353. In *Brundidge*, we gave the confidential source's statements greater weight because he observed the defendant's crimes firsthand and was capable of giving detailed information, finding that such a basis of knowledge overcame any shortcomings in the source's veracity. *Id.*

Martinez argues that probable cause could not come from McCann's

assistance because McCann was an unreliable and untruthful informant. In considering the totality of the circumstances, we note that McCann was not an anonymous tipster, and he had an abundance of firsthand knowledge. He described various quantities of drugs by type, how and where they were stored within the house, and the location of firearms and ammunition. Moreover, McCann was proven a reliable informant based on his assistance in the investigation of Martinez' supplier, Thanh Truong, a fact overlooked by Martinez. Finally, although not required, McCann's information was corroborated by the police when they verified he occupied the home using an electric bill and Detective Russ' ability to acquire drugs from Martinez through McCann. We are also persuaded of McCann's reliability by the fact that on the night of the arrest, he again described the state of the house in detail to police observers and told them Martinez would be leaving soon with a bag containing drugs and a gun. The police moved in a short time later after observing Martinez actually leave with such a bag in his possession and drive off in a waiting car. Certainly, the totality of the circumstances showed more than a fair probability that Martinez had drugs and a gun with him in the car. Thus, there was sufficient probable cause and the police did not need a warrant to search the car.

**B. Sufficiency of the Warrant**

Martinez next argues that the warrant issued was insufficient because there was a lack of probable cause and it was overly broad. Police must have probable cause and a validly executed warrant to search a home absent some exigency. *Payton v. New York*, 445 U.S. 573, 576 (1980). An affidavit in support of a search warrant should "establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). Warrants must describe the people and places searched with particularity in order to avoid "exploratory rummaging." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971); *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007). The Supreme Court has held that, during a search of premises open to the public, police executing a valid warrant may search persons on the premises only if they have independent probable cause to do so. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

In this case, as discussed above, the police had probable cause to support the search of Martinez' home based on information from McCann. Additionally, the warrant contained the statements of the victim of a sexual assault who identified Martinez from a photograph. The police linked the house to the defendant's alleged conduct by verifying his name with the electric company and the fact that McCann rented the home to Martinez. Thus, there was a clear link

14

between the drug and sexual assault crimes and Martinez' home.

Martinez wrongly argues that the warrant was overly broad because it permitted the search of vehicles at the home and all persons found in the home. The warrant was limited to a search of places where drugs or weapons might be found, which is not the same as authorizing exploratory rummaging. Police could look for drugs and drug paraphernalia in any containers in which they might be found. Finally, Martinez relies in part on *Ybarra* to challenge the warrant's particularity, but that case involved the search of persons on premises open to the public, not a private residence. In any case, Martinez cannot challenge the officer's authority to search all persons on the premises because he lacks standing to assert their Fourth Amendment rights. Similarly, Martinez cannot object to evidence found in plain view because the police had a right to be inside the home pursuant to the warrant, they viewed drugs and drug paraphernalia in the open, and it was immediately apparent that these items are illegal. *See United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006).

## V. Evidentiary Rulings

A district court's evidentiary rulings are reviewed for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997); *Smith*, 459 F.3d at 1295 (citing *United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002)); s*ee*

15

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. ___,128 S. Ct. 1140, 1144-45 (2008) (courts of appeals afford broad discretion to a district court's evidentiary rulings based on its "greater experience in evidentiary matters"). "'An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, and errant conclusion of law, or an improper application of law to fact.'" *Smith*, 459 F.3d at 1295 (quoting *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005)). With these standards in mind, we address Martinez' evidentiary issues raised on appeal.

## A.  Defendant's Letter to Magistrate Judge

Martinez claims that his letter to the magistrate judge should have been excluded as part of plea negotiations. Fed. R. Evid. 410 provides in part that "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is inadmissible against the defendant participating in the plea discussions. Fed. R. Crim. P. 11(c) prohibits the court from participating in plea discussions. "An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement." *Id*. Where there are plea discussions between the prosecution and defendant, judicial pressure in the process is prohibited. *United States v. Johnson*, 89 F.3d 778, 782 (11th Cir. 1996). Where portions of a writing, such as the letter

at issue here, are admitted, the rule of completeness permits a party adversely affected by the writing to require the introduction of any other part of the same writing when fairness requires its "contemporaneous consideration." Fed. R. Evid. 106. "'It is well established . . . that to invite error is to preclude review of that error on appeal.'" *United States v. Campa*, 529 F.3d 980, 1000 (11th Cir. 2008) (quoting *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005)).

In this case, Martinez' argument fails because the district court was not involved in the plea discussions and any other error was invited by Martinez when he asked to introduce the entire letter. The Government sought to introduce a portion of the letter Martinez sent to the magistrate judge in order to rebut testimony from Martinez' girlfriend about McCann's involvement. Martinez is essentially arguing that his unilateral contact with the judge instituted plea negotiations. However, there were no plea negotiations because there was no negotiation and Martinez' letter was not sent to the prosecution, as Fed. R. Crim P. 11(e) requires. The magistrate judge was not involved in the plea discussions and did not exert any pressure on Martinez. *Cf. United States v. Corbitt*, 996 F.2d 1132 (11th Cir. 1993) (court exerted pressure on defendant to take deal by assuring him of a "fairly high" sentence if case went to trial). Martinez cannot object to any portions of the letter beyond the part offered by the Government

17

because he invited the error by asking that more of the letter be admitted under the rule of completeness. The district court did not abuse its discretion in admitting this letter.

## B. Allegedly Exculpatory Letter

Martinez argues that the court wrongly excluded two other letters that were allegedly exculpatory. A district court's rulings on the admission of evidence will only be disturbed if there is a clear abuse of discretion. *United States v. Jimenez*, 224 F.3d 1243, 1249 (11th Cir. 2000). The standard for harmless error is "whether the complaining party's substantive rights were affected." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1276 (11th Cir. 2008) (citing *SEC v. Diversified Corp. Consulting Group*, 378 F.3d 1219, 1228 (11th Cir. 2004)).

In this case, Martinez alleges that two letters Martinez wrote after his arrest implicated McCann as the source of the drugs. Before trial, the Government sought to introduce the letters as evidence of Martinez' consciousness of guilt or knowledge of drug trafficking. The district court questioned the relevance of the letters but withheld a ruling on admissibility until trial. At trial, and outside of the jury's hearing, Martinez objected to the admission of these letters, but asked that if the court admitted the letters, the entire letters be admitted under the rule of completeness. The Government did not offer the letters into evidence and they

18

were not admitted by the district court. Martinez' argument on appeal seems to be that portions of the letters implicating McCann should have been admitted because they tended to prove Martinez was set-up by McCann. Aside from the hearsay hurdle he faces in getting these letters admitted, Martinez cannot claim error here because his objection was granted by the district court. To the extent the district court failed to admit the letters, due in part to an objection by Martinez, its decision was not an abuse of discretion. The district court did not abuse its discretion because the government did not offer the letters into evidence and Martinez did not offer a valid justification for their admission.

## C.  McCann's Alleged Bad Acts

Martinez argues the court erred in not allowing him to question McCann about either his involvement in a kidnaping while acting as an informant or about a prior federal mortgage fraud investigation involving McCann. Martinez argues the evidence was relevant to show McCann's motives to lie about Martinez. A party cannot ask groundless questions of a witness. *Michelson v. United States*, 335 U.S. 469, 481 (1948). A good-faith basis for questioning is required. *See United States v. Crutchfield*, 26 F.3d 1098, 1101-02 (11th Cir. 1994); Fed. R. Evid. 608.

In a pre-trial motion, Martinez argued that McCann was unreliable because

McCann failed to report a kidnaping Martinez committed. This argument is eviscerated by Martinez' admission at the suppression hearing that the kidnaping never occurred and by Martinez' failure to explain the probative value of this evidence. The trial court responded to Martinez' argument by suggesting this matter was better suited to be raised at trial. Martinez failed to raise this issue at trial and thus, it is waived.

Martinez also argued before trial that McCann sought revenge against Martinez for Martinez reporting McCann to the FBI for money laundering and mortgage fraud. At trial and outside the presence of the jury, Martinez' counsel questioned McCann about his involvement in any mortgage fraud and his knowledge of a federal investigation into his actions. McCann testified that he was unaware of any investigation. Under Fed. R. Evid. 608(b), Martinez was required to accept McCann's answer and could not offer extrinsic evidence to contradict his testimony. The district court's decision to not allow this line of questioning before the jury was in keeping with Fed. R. Evid. 608(b) and was not an abuse of discretion.

## D. Prior Convictions

Martinez argues that evidence of his prior convictions for possessing and delivering drugs and the fact that his right to possess a firearm had not been

restored was unfairly prejudicial or lacked probative value. "Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence more or less probable than without the evidence. Fed. R. Evid. 401. Evidence of predisposition is relevant when a defendant raises the defense of entrapment. *Russell*, 411 U.S. at 429; *United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir. 2007). "Evidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (quoting *United States v. Cardenas*, 895 F.2d 1338, 1344 (11th Cir. 1990)).

In this case, the district court determined that the probative value of the evidence concerning Martinez' right to possess a firearm substantially outweighed any danger of unfair prejudice. Martinez' possession of the revolver despite his status as a convicted felon tends to show that he kept the gun to further some unlawful purpose. The district court's determination was not an abuse of discretion. The district court also found that the prior drug convictions were relevant not only to his intent to distribute drugs, but also to demonstrate predisposition and rebut Martinez' entrapment defense. The district court's determination that the probative value of this evidence substantially outweighed any danger of unfair prejudice was not an abuse of discretion. In any event, any

21

error by the district court in admitting this evidence was harmless due to the testimony of prosecution witnesses at trial, as well as the substantial amount of physical evidence gathered in support of the charges against Martinez.

## VI. Supplemental Jury Instructions

Martinez objects to the district court's instructions to the jury after the jury asked whether they could consider McCann's testimony in light of his admission that he used marijuana. "A challenged supplemental jury instruction is reviewed as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel 'to determine whether the jury was misled and whether the jury understood the issues.'" *United States v. Johnson*, 139 F.3d 1359, 1366 (11th Cir. 1998) (quoting *Johns v. Jarrard*, 927 F.2d 551, 554 (11th Cir. 1991)); *see also Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1115 (11th Cir. 2006). Jury instructions on the whole must accurately reflect the law. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). "We will reverse the trial court because of an erroneous instruction only if we are 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" *Barnes & Noble*, 437 F.3d at 1115 (quoting *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1351 (11th Cir. 2004)).

In this case, the jury asked: "Does McCann's admission that he committed a

crime, smoking marijuana, while acting as an informant mean that his testimony cannot be considered?" Martinez believes the court's "no" answer was a directive to the jury to accept McCann's testimony. Martinez would have required the court to only re-read the instructions regarding the level of caution a jury should have when considering the informant testimony, but this would not have answered the question, namely whether the commission of a crime by an informant excludes that informant's testimony. The court's answer did not misstate any substantive law and, when considered alongside the lengthy prior instructions regarding witness testimony, was not misleading. The court did not intrude into the jury's province of weighing the evidence. There was no error in the court's supplemental jury instruction.

## VII. SENTENCING

Martinez appeals his sentences after a jury found him guilty of Counts 1 through 4. With respect to Martinez's controlled-substance convictions in Counts 1, 2, and 4, the district court determined at sentencing that Martinez's base offense level was 32 based on the quantity of drugs attributed to him, pursuant to U.S.S.G. § 2D1.1. The court also applied a two-level vulnerable-victim enhancement, pursuant to U.S.S.G. § 3A1.1(b)(1), giving him an offense level of 34. However, the court determined that Martinez was a career offender under U.S.S.G. § 4B1.1

and, because the statutory maximum penalty was life imprisonment, his offense level became 37, pursuant to § 4B1.1(b)(A). Because his status as a career offender automatically gave him a criminal history category of VI, his applicable guideline range became 360 months to life imprisonment.

With respect to Counts 1, 2, and 4, the court imposed a sentence of 360 months' imprisonment as to each count, to run concurrently with each other. With respect to Count 3, the court imposed the mandatory minimum statutory sentence of 60 months' imprisonment, to run consecutively with the court's sentences as to Counts 1, 2, and 4.

On appeal, Martinez challenges the court's 360-month sentence imposed for his controlled-substance convictions. He does not dispute his status as a career offender. He argues that the court erred by calculating his applicable guideline range by: 1) determining the drug quantity for which he was responsible; 2) applying the vulnerable-victim enhancement under U.S.S.G. § 3A1.1(b)(1); and 3) declining to grant him a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Martinez also appears to argue that his sentence was unreasonable because he was a drug addict with a history of drug abuse and was the victim of outrageous governmental conduct.

After *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d

621 (2005), sentencing generally requires two steps: first, the district court must correctly calculate the guideline range; second, the district court must consider the factors listed in 18 U.S.C. § 3553(a) in arriving at a reasonable sentence. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

## A. Drug Quantity and Vulnerable-Victim Enhancement

"Section 2D1.1 of the guidelines provides that the base offense level for a possession or a conspiracy drug offense is ordinarily calculated by determining the quantity of drugs attributable to a defendant." *Id*.

Section 2D1.1(e) to the Guidelines provides that, subject to an exception not applicable in this case, if "the defendant committed, or attempted to commit, a sexual offense against another individual by distributing, with or without that individual's knowledge, a controlled substance to that individual, an adjustment under § 3A1.1(b)(1) shall apply." U.S.S.G. § 2D1.1(e). Section 3A1.1(b)(1) provides for a two-level enhancement to the defendant's offense level where "the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1).

We decline to address whether the district court erred in determining the drug quantity attributable to Martinez or applying the vulnerable-victim enhancement because any such error was harmless. This is so because Martinez

does not dispute that he was sentenced as a career offender and, therefore, any error would not affect the calculation of his final applicable guideline range under § 4B1.1(b)(A).

## B. Acceptance of Responsibility

We review the district court's denial of a reduction for acceptance of responsibility for clear error. *United States v. Moriarty*, 429 F.3d 1012, 1022 (11th Cir. 2005). "'The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.'" *Id*. (quoting U.S.S.G. § 3E1.1, comment. (n.5)). "Thus, we will not set aside a district court's determination that a defendant is not entitled to a § 3E1.1 adjustment unless the facts in the record clearly establish that the defendant has accepted responsibility." *Id*. at 1022-23.

A defendant is entitled to a two-level reduction in his offense level if he "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). An appropriate consideration in determining whether a defendant is entitled to a reduction is if he "truthfully admit[s] the conduct comprising the offense(s) of conviction . . . . However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner

inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.1(a)).

We conclude that the district court did not clearly err by declining to grant Martinez a reduction for acceptance of responsibility because he does not dispute that he maintained his innocence even after he proceeded to trial and was convicted.

## C. Reasonableness

We review a defendant's sentence for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. ___, 128 S.Ct. 586, 597, 169 L. Ed. 2d 445, 458 (2007); *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). We decline to review the reasonableness of Martinez' sentence in light of his history of drug abuse or the alleged outrageous governmental conduct because he did not sufficiently raise the issue in his brief. *See United States v. Sanchez*, 269 F.3d 1250, 1293 n.7 (11th Cir. 2001) (failure to brief and argue issues on appeal means Defendant has abandoned claims).

After a review of the record and the parties' briefs, we discern no reversible error. Accordingly, we affirm Martinez' sentences.

## VII. CONCLUSION

For the reasons stated above, the decision of the district court is

**AFFIRMED**.