[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11287

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DAMION CLARKE,
a.k.a. Dobbs,
a.k.a. Damion Clark Kingston,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 6:22-cr-00197-WWB-DCI-2

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and LUCK, Circuit Judges.

PER CURIAM:

Damion Clarke appeals his conviction for conspiracy to distribute and possess with intent to distribute cocaine. 21 U.S.C. §§ 841(b)(1)(B), (C), 846. He contends that the government failed to present sufficient evidence that he formed an agreement with someone other than a confidential informant or government agent. We affirm.

A federal grand jury indicted Clarke on one count of conspiracy to distribute and possess with intent to distribute cocaine. *Id.* At trial, FBI Special Agent Brian Wilson testified that Julio Lugo, a cooperating informant, informed FBI agents about a Jamaican criminal enterprise that distributed illegal narcotics. Clarke served as the middleman for Rafick Gilpin, a supplier. Based on this intelligence, the FBI directed Lugo to contact Clarke and arrange the purchase of cocaine from Gilpin.

In November, Lugo called Clarke and discussed a price and a location for the transaction. Lugo informed Clarke that the purchase was for three buyers and requested three packages. Clarke agreed to sell one ounce of cocaine to Lugo for $1,200. At the first transaction, Lugo met with Gilpin. Afterward, Clarke spoke with

Lugo and explained that he would consult Gilpin about the price moving forward.

In December, another meeting took place between Lugo, Clarke, and an undercover agent, during which Clarke called Gilpin on a phone. They agreed to sell 4.5 ounces of cocaine for $5,175 over the course of several transactions. Lugo and Clarke spoke on the phone several times and scheduled a transaction involving two ounces of cocaine. Clarke communicated with Lugo and Gilpin to find out who would meet the undercover agent. At the second transaction in January, Lugo purchased two ounces from two individuals, including Clarke's cousin, who was Gilpin's associate. Clarke's cousin called Clarke about the transaction. There were several more buys with Gilpin, and agents called Clarke to communicate with Gilpin. After the government rested, Clarke moved for a judgment of acquittal based on insufficient evidence, which the district court denied.

Clarke testified that, while working for Lugo, Lugo pressured him to find a narcotics supplier in exchange for a loan and help securing healthcare and a driver's license. He eventually agreed to refer Lugo to Gilpin. He testified that he never worked for Gilpin. On cross-examination, he testified that he was never threatened with violence or job loss if he did not help Lugo. He facilitated the transactions because he believed that he would receive a cut.

Clarke admitted that, during a November phone call, he provided Lugo with prices and the location where he could buy

cocaine from Gilpin, and he admitted transporting money for Gilpin. He also admitted that he called Gilpin to convey Lugo's terms for the transaction and that after the first transaction, he offered to call Gilpin about complaints related to the quality of the cocaine.

Clarke admitted that during the December meeting, he discussed the price and quantity for future transactions, called Gilpin, and assured the undercover agent that he would ensure the drugs were acceptable. He admitted that he told Gilpin "to move the drugs" and that he could arrange a discount. He also admitted that he stated that some of Gilpin's associates "pulled guns for no reason." Additionally, he admitted that he contacted Gilpin's associates to facilitate the January transaction.

Clarke rested and renewed his motion for a judgment of acquittal. The district court denied his motion. The jury returned a verdict of guilty.

Clarke filed a post-trial motion for judgment of acquittal and for a new trial on the ground that the government failed to prove an agreement between him and anyone other than the informant and law enforcement officers. The district court denied the motion and sentenced Clarke to 15 months of imprisonment followed by 3 years of supervised release.

We review the sufficiency of the evidence to support a conviction *de novo* and view the evidence in the light most favorable to the jury's verdict. *United States v. Ifediba*, 46 F.4th 1225, 1237, 1242 (11th Cir. 2022). We review a motion for a new trial for abuse of discretion. *United States v. Byrd*, 403 F.3d 1278, 1288 (11th Cir. 2005).

We "will reverse a conviction based on insufficient evidence only if no reasonable trier of fact could have found" the defendant guilty beyond a reasonable doubt. *United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017) (internal quotation marks omitted).

To convict a defendant for conspiracy to distribute drugs, the government must prove beyond a reasonable doubt that there was an agreement between two or more people to possess, and intend to distribute, drugs; the defendant knew about the agreement; and the defendant voluntarily joined the agreement. *United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021). The agreement must be reached by at least two individuals who are neither government agents nor informers. *United States v. Wright*, 63 F.3d 1067, 1072 (11th Cir. 1995). "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose or plan may be inferred from a development and collocation of circumstances." *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014) (internal quotation marks and alteration omitted).

The existence of a drug conspiracy must often be proved by inferences from the conduct of alleged participants or other circumstantial evidence because of its secretive nature. *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006). We will affirm a conspiracy conviction if the evidence proves that the defendant "was aware of the conspiracy's essential nature, even if he did not know all of its details, played only a minor role in the overall scheme, did not have direct contact with other alleged co-conspirators, or did not participate in every stage of the conspiracy." *United States v.*

*Sosa*, 777 F.3d 1279, 1290 (11th Cir. 2015). Additionally, "where there are repeated transactions between participants buying and selling large quantities of illegal drugs, that may be sufficient to find the participants were involved in a single conspiracy to distribute those drugs." *Reeves*, 742 F.3d at 497. "The government need not prove that a defendant participated in every stage of the conspiracy or had direct contact with each of the other alleged co-conspirators." *Id.* at 498.

The government presented sufficient evidence to prove that Clarke conspired to distribute and possess with intent to distribute cocaine. We reject Clarke's contention that no evidence connects him to a third party, besides Lugo, the confidential informant. Clarke acted as an intermediary between Gilpin, who was neither a government agent nor an informant, and Lugo. Clarke facilitated at least two sales of significant quantities of cocaine between Lugo and Gilpin that were intended for multiple buyers. *See Reeves*, 742 F.3d at 497. Clarke admitted that he facilitated these transactions to receive a cut. He also admitted that he handled a complaint from Lugo about Gilpin's product and negotiated with Lugo and an undercover agent on Gilpin's behalf. Coupled with the call from Gilpin's associate, Clarke's statement about how Gilpin's associates behaved, and Clarke's admission that he transported money for Gilpin, a jury could reasonably infer that Clarke was part of Gilpin's operation. Although Clarke testified that he never worked for Gilpin, the jury was not required to believe him and could infer that the opposite was true. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant, if disbelieved by

the jury, may be considered as substantive evidence of the defendant's guilt" such that "if disbelieved the jury might conclude the opposite of his testimony is true." (internal quotation marks and emphasis omitted)). Sufficient evidence proved an agreement between Clarke and Gilpin to distribute and possess with intent to distribute cocaine.

*United States v. Wright* is distinguishable. In *Wright*, we held that there was insufficient evidence to infer an agreement between the defendant and a seller to possess cocaine with intent to distribute where the seller sold cocaine to the defendant in a one-time, buy-sell transaction and "[t]he record reveal[ed] little conversation between" the defendant and the seller. *Wright*, 63 F.3d at 1072. Clarke, in contrast, admitted facilitating multiple transactions, and there were multiple conversations between Clarke, Lugo, and Gilpin. For the same reasons, the district court also did not abuse its discretion in denying Clarke's motion for a new trial.

We **AFFIRM** Clarke's conviction.