United States Court of Appeals,

Eleventh Circuit.

No. 96-4514.

UNITED STATES of America, Plaintiff-Appellee,

v.

Rafael Angel ALEJANDRO, Defendant-Appellant.

Aug. 11, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-753-CR-HIGHSMITH), Shelby Highsmith, Judge.

Before ANDERSON and BIRCH, Circuit Judges, and WOODS*, Senior District Judge.

HENRY WOODS, Senior District Judge:

THE FACTS.

Appellant was stopped at the Miami airport by custom and immigration authorities. He was found to have 108 counterfeit birth certificates purportedly from New York and New Jersey loosely inserted in the pages of a rolled-up newspaper. When questioned by Immigration Service investigators, appellant claimed that the birth certificates were related to a case he was working in cooperation with the Federal Bureau of Investigation and, specifically, with an FBI agent named Al Wilson. Daniel Tarasevich, the senior Immigration Service investigator, then telephoned FBI Agent Wilson. Wilson advised that appellant had once worked as an informant for the FBI but was not so engaged at that time. He was first questioned by Agent Wilson in connection with Victor Gerena, who was alleged to be a member of the Puerto Rico independence movement known as Machateros. Later, he was asked about other members of this group.

When FBI Agent Wilson disavowed any present relationship with appellant, Tarasevich arrested him. He was charged with "possession with intent to transfer unlawfully five or more false identification documents in violation of 18 U.S.C. § 1028(a)(3)." The first trial ended when the jury was not able to agree on a verdict. On retrial, the appellant was found guilty and sentenced to

---

*Honorable Henry Woods, Senior U.S. District Judge for the Eastern District of Arkansas, sitting by designation.

twenty months imprisonment and three years supervised release.

Appellant testified in his own behalf. He admitted traveling to Peru in September of 1995 at the behest of one Roger Ruiz to secure the counterfeit birth certificates, which were to be used to obtain drivers' licenses. His plane ticket was purchased by Ruiz. Despite his testimony that he was acting undercover in his dealings with Ruiz, appellant admitted that he had not contacted Agent Wilson or the FBI prior to making his arrangements with Ruiz and traveling to Peru. As a matter of fact, appellant's last meeting with FBI Agent Wilson was over a year prior to the trip to Peru, and his last contact with Wilson was in December, 1994, nine months previous. Appellant testified that he had planned to give the certificates to FBI Agent Wilson as tangible evidence and to provide information on counterfeiting activity in Peru.

On appeal, the following issues are raised: (1) the district judge erred by denying appellant's motion for judgment of acquittal; (2) the district judge erred by failing to instruct the jury on the proper elements of the offense; and (3) appellant was denied a fair trial in two respects: (a) when the district judge did not grant a continuance, and (b) by the prosecutor's closing argument regarding the absent witness, Agent Wilson.

We affirm the judgment of conviction.

## SUFFICIENCY OF THE EVIDENCE.

Appellant contends that he was entitled to a judgment of acquittal, since the court reserved opinion on the motion at the close of the government's case-in-chief. At this point, appellant claims the evidence was insufficient to take the case to the jury. Fed.R.Crim.P. 29(b), provides in part: "If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved."

We are not persuaded that the trial judge reserved on the motion. At the close of the government's case, the following ruling was made on the motion for a judgment of acquittal.

> [S]ince I have gone this far, I'm going to allow this matter, I am going to deny your motion. I am sure you will renew the motion. I am going to reserve on it. And unless things radically change, if the jury returns a verdict of guilty, I am going to set it aside.

A reasonable interpretation of this ruling is that the motion was denied and that the

reservation was intended to apply to an expected motion of acquittal at the close of all of the evidence. The most that can be said in appellant's favor is that the ruling was ambiguous. If so, it was incumbent on the appellant to seek a clarification from the court. No such clarification was requested.

After this denial by the district court of appellant's Rule 29 motion, appellant proceeded to testify and present evidence in his behalf. In so doing, he waived all objections to the court's denial of his Rule 29 motion. *United States v. Thomas,* 987 F.2d 697, 702 (11th Cir.1993) ("[W]hen a defendant offers rebuttal evidence [to the government's case-in-chief] he "foregoes or waives appellate review of (or any error in) the denial of the motion [for judgment of acquittal]' ") (quoting *United States v. Rhodes,* 631 F.2d 43, 44 (5th Cir. Unit B.1980)). The reviewing court will examine all of the evidence, and not limit its review to the evidence presented in the case-in-chief. *United States v. White,* 611 F.2d 531, 536 (5th Cir.1980), *cert. denied,* 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980).

In reviewing sufficiency of evidence claims, this Court "will uphold a conviction if, after viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in its favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* [quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ]. There is abundant evidence to sustain the conviction in this case. The elements of the offense are: (1) the defendant knowingly possessed five or more false identification documents, (2) the defendant had the willful intent to transfer the false identification documents unlawfully, and (3) the defendant's possession of the false identification documents was in or affecting interstate commerce.

Appellant's main thrust is an attack on the evidence to support the second element. He admitted to knowing possession of 108 counterfeit birth certificates, which he transported from Peru to the United States. While the evidence of intent to transfer the certificates is circumstantial, it is substantial. The counterfeit certificates were secreted in his newspaper. Their number refuted the inference that they were for his personal or professional use. Appellant knew that these documents

could be used unlawfully to obtain drivers' licenses and that Ruiz was involved in this activity which, according to a government witness, produced an income of $200-$300 for each certificate. Thus, 108 certificates had a potential value of $32,400.

By returning a verdict of guilty, the jury necessarily rejected appellant's explanation of his possession of the counterfeit certificates. The jury did not believe appellant's story that he went to Peru to initiate an FBI investigation. His intent to transfer these certificates could be inferred by the jury if they believed his story to be fanciful. This Court has recognized that "a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." *United States v. Brown,* 53 F.3d 312, 314 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996). The defendant's testimony denying guilt, if disbelieved by the jury, can be evidence that the opposite is true and can establish the elements of the offense. *Id.,* at 314-15. This rule has "special force" where the highly subjective elements, such as intent, are to be proved. *Id.,* at 315.

If the jury disbelieved appellant's denial of guilt and rejected his claim that he was working for the FBI, the jury permissibly concluded from his testimony that: (1) appellant did not believe he was working for the FBI when he traveled to Peru for Ruiz; (2) the purpose of appellant's trip to Peru was not to get tangible evidence for Agent Wilson, but simply to pick up the counterfeit birth certificates; (3) appellant did not intend to deliver the false documents to the FBI, but to Roger Ruiz; and (4) appellant knew that the false birth certificates were valuable. The jury could also properly consider appellant's false exculpatory statements upon his arrest as substantive evidence of his guilty intent. *See, e.g., United States v. Eley,* 723 F.2d 1522, 1525 (11th Cir.1984). When appellant was initially interviewed by INS Senior Immigration Inspector Tarasevich, he falsely denied knowing that there were counterfeit birth certificates concealed in his newspaper.

Appellant argues, however, that even if there were enough evidence to establish his intent to transfer the documents, there was not sufficient evidence to prove that the transfer violated a specific federal, state or local statute. However, Section I, Title 18, U.S.C. § 1028(a)(2) makes it unlawful to transfer false identification documents knowing that the documents were produced

without lawful authority.  Since the evidence shows that appellant knew the birth certificates were counterfeit and that he intended to transfer the false documents, the evidence is sufficient to establish a violation of this section of the statute.

THE PURPORTED INSTRUCTIONAL ERROR.

Appellant urged the court to instruct that the government had the burden to prove, beyond a reasonable doubt, that the intended transfer of the false identification documents violated a specific federal, local or state law.  The court agreed with appellant and gave an instruction, in relevant part, as follows:

> In this case, the defendant is charged with violating what is known as Title 18, U.S.Code, Section 1028(a)(3).  This statute makes it illegal for anyone to knowingly possess with intent to transfer unlawfully five or more false identification documents[,] such possession being in or affecting interstate or foreign commerce.

> In order to find the defendant guilty of this offense, you must find beyond a reasonable doubt all of the following:

> First, that the defendant knowingly possessed five or more identification documents.

> Second, that the defendant did so with the willful intent to transfer the false identification documents.

> And Third, that the defendant's possession of the false identification documents was in or affecting interstate or foreign commerce.

> The intent to transfer false identification documents unlawfully is the intent to sell, pledge, distribute, give, loan, or otherwise transfer false identification documents knowing that such documents were produced without lawful authority.

The last paragraph of this instruction tracks the language of 18 U.S.C. § 1028(a)(2), which reads as follows:

> Whoever, in a circumstance described in subsection (c) of this section— ...

> (2) knowingly transfers an identification document or a false identification document knowing that such document was stolen or produced without lawful authority;

> ...

> or attempts to do so, shall be punished as provided in subsection (b) of this section.

The government initially argued that it was sufficient to define "unlawfully" in a general way as "to do something voluntarily which the law forbids."  The trial court rejected this argument and chose to follow *United States v. Rohn,* 964 F.2d 310 (4th Cir.1992), which concludes that Section

1028(a)(3) mandates that the government establish that the "intended uses or transfers [of the false identification documents] would violate one or more federal, state, or local laws." *Id.* at 313.

The appellant did not make a specific objection to the court's instruction. Nor did he offer a instruction of his own. He concedes that he only called the court's attention to *U.S. v. Rohn, supra.* The court attempted to comply with the doctrine of this case. There was thus no proper objection to the instruction or any alternative formulation submitted by appellant. Plain error is, thus, the standard of review. "The plain error exception will not apply unless the charge is so clearly erroneous that there is a likelihood of a grave miscarriage of justice ... or it affects the fairness of the proceeding." *United States v. Cruz-Valdez,* 743 F.2d 1547, 1553 (11th Cir.1984).

The giving of this instruction not only did not constitute plain error, but it was the court's attempt to comply with appellant's objection to an instruction proffered by the government and to meet the requirements of *U.S. v. Rohn, supra.*

REFUSAL OF A CONTINUANCE.

At the close of the defense case on the third day of the second trial, appellant's counsel, for the first time, asked whether the government intended to call FBI Agent Wilson in its rebuttal case. When the government denied such an intention, defense counsel expressed the desire to call Wilson, who was in New Jersey. Appellant then asked for a continuance to fly the witness to Miami. The trial court denied the request.

In *United States v. Cross,* 928 F.2d 1030, 1048 (11th Cir.1991), *cert. denied,* 502 U.S. 985, 112 S.Ct. 594, 116 L.Ed.2d 618 (1991), this court dealt with the issue of a continuance to obtain the testimony of an absent witness. The defendant claimed that he needed the testimony of his daughter, a Canadian resident. The court granted one continuance but refused a second, on the ground that a summary of the proposed testimony demonstrated that it would be cumulative and of marginal value to the defense. The court set out the following factors for evaluating a claim of error in the denial of a continuance to obtain an absent witness: ... "(1) the diligence of the defense in interviewing the witness and procuring her testimony; (2) the probability of obtaining the testimony within a reasonable time; (3) the specificity with which the defense was able to describe the

witness's expected knowledge or testimony; and (4) the degree to which such testimony was expected to be favorable to the accused, and the unique or cumulative nature of the testimony. *United States v. Costello,* 760 F.2d 1123, 1126 (11th Cir.1985). *See also Dickerson v. Alabama,* 667 F.2d 1364, 1370 (11th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982)." The evaluation of these criteria is within the sound discretion of the trial court. *United States v. O'Neill,* 767 F.2d 780, 784 (11th Cir.1985).

These same factors were cited in the recent case of *United States v. Wright,* 63 F.3d 1067 (11th Cir.1995), where the court pointed out that "even had the Appellant provided the substance of the absent witness's testimony by providing what he, the Appellant, would have said on the stand, it would likewise be unfavorable to his entrapment defense, as well as cumulative of Appellant's own testimony." *Id.* at 1071-2.

If we test the factors in the instant case against the criteria advanced in the above cases, it is apparent that the trial judge's decision was not "arbitrary or unreasonable." *Id.* at 1071. If the appellant regarded Wilson's testimony as important, due diligence required that a subpoena be issued to secure his attendance. Due diligence further required that he ascertain whether or not the government intended to call Wilson before the last day of a three-day trial.

The trial was in its closing moments when appellant proposed to bring a witness from New Jersey. To locate and bring this witness from a substantial distance would have entailed a delay in the trial. There is a serious question as to whether Agent Wilson's testimony would have been of any value to the appellant. In the first trial, Wilson testified for the government. The trial judge heard this witness and was in a position to decide whether the absence of this testimony would deprive appellant of a fair trial. The FBI Agent contradicted appellant with regard to the vital core of his defense—that he was working for the FBI. If appellant felt that some part of Wilson's testimony would assist him, he did not specify what it might be. Wilson's testimony was available from the first trial. If it were as vital as appellant claims, he could have offered a transcript of all or any part at the second trial, on the theory that the witness was unavailable.

In his reply brief, appellant argues that the trial judge, in comments at the sentencing hearing,

recognized that failure to grant a continuance deprived him of a fair trial. At the sentencing hearing, the government moved for an enhancement of the guidelines because appellant had obstructed justice by giving perjurious testimony. The trial judge responded as follows:

> ... the court did not fully accept the testimony of the FBI Agent. Somehow there seemed to be a lack of candor and I think that influence [sic] to the jury in the first instance, that is the jury that could not agree upon a verdict.

These comments were hardly relevant to the ruling on the continuance. They were made with regard to testimony that was not given at all in the trial under consideration on this appeal. They were made long after in an entirely different context. The factors bearing on the granting of a continuance were those existing at the time the motion was made. There is an absence of any showing that the trial judge abused his discretion in denying the continuance at the time the motion for a continuance was made. This matter was not before the court at the sentencing hearing. If the court felt that appellant had not received a fair trial, he had the power and duty to set aside the conviction.

## THE CLOSING ARGUMENT.

Appellant argues that the U.S. Attorney's closing argument was improper and deprived him of a fair trial. He claims that the statement that the defense could have called Wilson unfairly left the jury with the impression that appellant had not tried to secure the FBI Agent's presence at the trial. An examination of the record shows that the U.S. Attorney's comments were a fair response to appellant's argument that the government could have called Agent Wilson to disprove the defense case. Failure of the government to call Wilson was the main theme of appellant's closing argument. He emphasized it repeatedly in a highly aggressive fashion, which was his right. Obviously, the government had a right to respond that defense counsel also had the power to subpoena Agent Wilson to testify for the defense. On this issue, *United States v. Schardar,* 850 F.2d 1457, 1463 (11th Cir.1988), *cert. denied,* 488 U.S. 932, 109 S.Ct. 326, 102 L.Ed.2d 343 (1988), and *United States v. Ivey,* 546 F.2d 139, 144 (5th Cir., 1977), *cert. denied,* 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977), are squarely in point.

AFFIRMED.