[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 12, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10870
Non-Argument Calendar

_____

D. C. Docket No. 08-20624-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARRY DWAYNE LEONARD,
a.k.a. Robert Edwards,
a.k.a. Larry Johnson,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 12, 2009)

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

Larry Dwayne Leonard appeals from his conviction for possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On appeal, Leonard argues that the district court: (1) clearly erred by overruling his objections to the government's use of its peremptory strikes under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (2) erred by denying his motion to suppress; (3) abused its discretion by denying his motion for a mistrial based on the government's admission of a bag of suspected cocaine into evidence; and (4) abused its discretion by denying his motion for a mistrial based on prosecutorial misconduct. In support of his third argument, Leonard contends that the bag of suspected cocaine was subject to the advance notice requirements set forth in Fed.R.Evid. 404(b), and that the government failed to comply with these requirements. For the reasons set forth below, we affirm.

**I.**

Before proceeding to a jury trial, Leonard filed a motion to suppress all of the physical evidence and statements obtained pursuant to a traffic stop in June 2008. The district court held a hearing regarding the motion to suppress.

During the suppression hearing, one of the officers who stopped Leonard, Martin Amaran, testified that he was driving a police car when he observed Leonard's car, which had windows so darkly tinted that Amaran could not see

2

through them to determine how many passengers were inside the car. In addition, he observed that Leonard failed to maintain a single lane. Amaran and his partner, Officer Dario Socarras, stopped Leonard's car and ordered Leonard to get out of the vehicle. As Leonard stepped out of his car, the officers observed that a gun slid off of his lap and onto the car's floorboard. In response to questioning, Leonard informed the officers that he did not have a permit to carry a concealed firearm. Socarras placed Leonard in the back of the police car. Thereafter, Amaran observed that there was an open beer bottle in the console of Leonard's car. Amaran and Socarras decided to arrest Leonard, and Socarras performed a search incident to his arrest. During this search, Socarras found a small bag containing white powder in one of Leonard's pockets. Socarras suspected that this substance was cocaine.

During the hearing, Leonard argued that the traffic stop constituted an illegal search and seizure under the Fourth Amendment because his failure to maintain a single lane did not constitute a traffic offense under Florida law. He did not raise any arguments regarding the dark tint of his car windows. The district court denied the motion to suppress, finding that Officers Amaran and Socarras had probable cause to believe that Leonard had violated Florida traffic laws by failing to maintain a single lane and driving a car with illegally tinted windows. The court

3

determined that either of these violations would have justified the stop.

During voir dire, Juror #8 disclosed that the same U.S. Attorney's Office that was prosecuting Leonard had also prosecuted her brother approximately ten years before. She believed that the judgment in her brother's case was unfair. Although she had indicated on her juror questionnaire that her brother's experience could affect her ability to be fair, she averred during questioning that she could reach a verdict in an impartial manner, and would not hold her brother's experience against the prosecution. After the court denied its motion to strike Juror #8 for cause, the government moved to peremptorily strike Juror #8. Leonard objected under Batson, noting that this juror, like himself, was African-American. The government responded that the juror's feelings about the prosecution of her brother would inherently cause her to be biased against the prosecution in Leonard's case. The court overruled Leonard's Batson objection.

Also during voir dire, Juror #13 stated that, due to her religious and moral convictions, she may require the government to prove guilt by a burden of proof higher than the "beyond a reasonable doubt" standard. The government moved to peremptorily strike this juror, and Leonard again objected under Batson, noting that this juror was African-American. The government responded to the objection by noting the juror's statement that she might hold the government to a burden of

4

proof higher than that prescribed by the jury instructions. The court overruled Leonard's Batson objection.

During voir dire, Juror #20 spoke at length about her belief that many law enforcement agents were "crooked" and would unfairly target young African-American boys for mistreatment. She continually noted her negative feelings toward police officers. She also stated, however, that someone who was proven to be guilty of committing an offense deserved imprisonment. The government moved to strike Juror #20 for cause based on her apparent bias toward law enforcement. Leonard again raised a Batson objection based on the juror's African-American race. The court granted the government's motion to strike the juror for cause based on the statements she made during voir dire.

The ultimate jury panel, which Leonard accepted subject to his previous objections, included five African-American jurors. During voir dire, the prosecution had exercised three of its six peremptory strikes.

During Leonard's trial, the government introduced the bag of suspected cocaine into evidence, and Officers Amaran and Socarras testified that they found this bag in one of Leonard's pockets after stopping his car. They also testified that they had suspected that the substance in the bag was cocaine. Amaran further testified that he had observed an open beer bottle in the console of Leonard's car.

5

Leonard objected to the admission of the bag of suspected cocaine into evidence under Fed.R.Evid. 404(b), asserting that it was impermissible character evidence. He also objected that the government failed to: (1) provide him with advance notice of its intent to introduce the bag, as required by Rule 404(b); (2) establish a proper chain of custody for the bag; and (3) demonstrate that the substance had tested positive for cocaine. The court overruled Leonard's 404(b) objection. Thereafter, the government introduced a chain of custody record that accompanied the bag of suspected cocaine. It did not, however, present evidence that the substance in the bag had tested positive for cocaine. At the close of the government's case, Leonard moved for a mistrial based on the government's introduction of the bag of suspected cocaine into evidence. The court denied his motion.

During his closing argument, Leonard argued that it was implausible that a convicted felon would keep a gun on his lap while the police followed him. Specifically, Leonard stated:

> It defies reason that . . . a convicted felon is going to be followed this far and have a gun on his lap that he knows – and knowing is an element the [g]overnment has to prove, that he's traveling this far going normal speed and that gun is going to be on his lap.

During its rebuttal, the government noted Leonard's argument that it was not plausible that he would keep a gun on his lap while the police followed him,

6

and responded:

> I don't know why he had it, but it's not that implausible that a convicted felon, Mr. Leonard, had the gun on his lap. The evidence you have heard is that the defendant is not the most law-abiding felon. He was driving inebriated.

Leonard moved for a mistrial based on the prosecutor's statement, asserting that the prosecution engaged in misconduct by arguing that he was not a law-abiding citizen.

The jury convicted Leonard of possessing a firearm as a convicted felon. The court sentenced him to a term of 264 months' imprisonment.

## II.

We review a district court's decision regarding a Batson challenge for clear error because "the trial judge is uniquely situated to evaluate the prosecutor's motives." United States v. Blackman, 66 F.3d 1572, 1575 (11th Cir. 1995).

In Batson, the Supreme Court held that the Constitution's Equal Protection Clause forbids a prosecutor to challenge potential jurors solely on account of their race. 476 U.S. at 89, 106 S.Ct. at 1719. The Court established a three-part inquiry for evaluating whether a peremptory strike was motivated by racial or ethnic discrimination. Id. at 96-98, 106 S.Ct. at 1723-24. First, the district court must determine whether the party challenging the peremptory strike has established a prima facie case of discrimination. Id. at 96-97, 106 S.Ct. at 1723. In order to

7

establish a prima facie case of purposeful discrimination, the defendant "must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of [his] race." Id. at 96, 106 S.Ct. at 1723 (citation omitted). In addition, "the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." Id.

If the objector makes a prima facie showing, the burden then shifts at step two to the striker to articulate a race-neutral explanation for the challenged strike. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. The explanation not only must be articulable, but also must "bear[] some relation to the case before the court." Blackman, 66 F.3d at 1575. At step three, the district court decides whether the objector has carried his burden of proving purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. at 1724. We have noted that "no authority suggests Batson extends to the area of challenges for cause." Blackman, 66 F.3d at 1575 n.3.

Here, the district court did not clearly err in overruling Leonard's Batson challenges because he failed to make a prima facie showing of discrimination regarding the government's challenges to Jurors #8, #13, and #20. Because the court permitted the government to strike Juror #20 for cause, this strike was not

8

subject to a <u>Batson</u> challenge.  In addition, the government used only three of its six peremptory strikes, and five African-American jurors served on the final jury panel.  Thus, it is clear that the government did not use its peremptory strikes to exclude every African-American juror it possibly could exclude from the jury. These circumstances did not give rise to an inference of discrimination and, as a result, Leonard has not shown a <u>prima facie</u> case of discrimination.  Moreover, even if Leonard were able to make this showing, his arguments would still lack merit because the government articulated race-neutral reasons for striking Jurors # 13 and #20, and these reasons were relevant  to the case before the court.

### III.

We normally review a district court's denial of a motion to suppress evidence under a mixed standard of review.  <u>United States v. Jiminez</u>, 224 F.3d 1243, 1247 (11th Cir. 2000). Under this mixed standard, we review "the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts <u>de novo</u>."  <u>Id.</u>  We also give due weight to the inferences that the district court and local law enforcement officers draw from the facts.  <u>Id.</u> at 1248. When considering a ruling on a motion to suppress, we construe all facts in the light most favorable to the party prevailing in the district court. <u>United  States v. Behety</u>, 32 F.3d 503, 510 (11th Cir.1994).

9

Where a defendant fails to raise a theory as to how the government violated his Fourth Amendment rights before the district court, we review only for plain error. United States v. Young, 350 F.3d 1302, 1305 (11th Cir. 2003). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009) (quotation omitted). In order for an error to be obvious for purposes of plain error review, "it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." United States v. Lett, 483 F.3d 782, 790 (11th Cir. 2007).

A traffic stop constitutes a seizure within the meaning of the Fourth Amendment and "is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion." Spoerke, 568 F.3d at 1248. "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." Jiminez, 780 F.2d at 978.

We have held that there is probable cause to conduct a traffic stop where an officer observes a defendant commit a non-criminal traffic violation such as speeding or making an illegal lane change. See, e.g., United States v. Steed, 548 F.3d 961, 968 n.4 (11th Cir. 2008) (traffic stop was reasonable because a police officer observed the defendant follow another car too closely and make an illegal lane change); United States v. Harris, 526 F.3d 1334, 1338 (11th Cir.) (officer had probable cause to stop a taxicab because he observed the cab fail to signal during a lane change), cert. denied, 129 S.Ct. 569 (2008); United States v. Pruitt, 174 F.3d 1215, 1217 n.1 (11th Cir. 1999) (probable cause existed to conduct a traffic stop because the defendant was exceeding the speed limit).

Florida law provides that:

> A person shall not operate any motor vehicle on any public highway, road, or street on which vehicle the side wings and side windows on either side forward of or adjacent to the operator's seat are composed of, covered by, or treated with any sunscreening material or other product or covering which has the effect of making the window nontransparent or which would alter the window's color, increase its reflectivity, or reduce its light transmittance, except as expressly permitted by this section. A sunscreening material is authorized for such windows if, when applied to and tested on the glass of such windows on the specific motor vehicle, the material has a total solar reflectance of visible light of not more than 25 percent as measured on the nonfilm side and a light transmittance of at least 28 percent in the visible light range. A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

Fla. Stat. § 316.2953.

Here, Leonard did not raise any argument before the district court that his car windows were not excessively tinted, or that the tint of his windows, even if excessive, did not justify a traffic stop. Accordingly, we review for plain error Leonard's argument that the dark tint on his car windows did not justify the traffic stop.

The district court did not err, let alone plainly err, by finding that the traffic stop was legal because the officers had probable cause to suspect that Leonard's car windows were illegally tinted. At the suppression hearing, Amaran testified that he noticed that Leonard's car windows had a tint that was so dark that he could not discern how many individuals were inside of the car. Accordingly, Amaran possessed probable cause to believe that Leonard committed a traffic violation under Fla. Stat. § 316.2953, which prohibits driving a car with windows so dark that they are not transparent. While Leonard argues that his darkly tinted windows did not provide the officers with justification to stop him because this did not constitute a criminal offense under Florida law, this argument lacks merit, as we have held that a police officer has probable cause to conduct a traffic stop where he observes a defendant commit a non-criminal traffic infraction.

Because the officers' traffic stop was justified by probable cause to believe

12

that he violated Fla. Stat. § 316.2953, we do not address whether the stop was also justified by Leonard's failure to maintain a single lane.

**IV.**

We review a district court's decision not to grant a mistrial for abuse of discretion because the district court is in "the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009) (quotation omitted). In addition, we review a district court's decision regarding the admissibility of evidence for abuse of discretion. United States v. Schlei, 122 F.3d 944, 990 (11th Cir. 1997).

Under Fed.R.Evid. 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b).

Only extrinsic evidence is subject to the requirements of Fed.R.Evid. 404(b). Schlei, 122 F.3d at 990. "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is

13

properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (quotation and alteration omitted). Such evidence "is not extrinsic under Rule 404(b), and thus falls outside the scope of the Rule. Id. (quotation omitted); United States v. Richardson, 764 F.2d 1514, 1521 (11th Cir. 1985) ("[t]hese prior wrongs were not extrinsic to the charged crimes because the evidence concerning prior crimes was inextricably intertwined with the evidence of the charged crime").

"[E]vidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Fed.R.Evid. 403." Edouard, 485 F.3d at 1344. Rule 403 provides, in part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. "In evaluating the district court's ruling under Rule 403, we view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006). "The court's discretion to exclude evidence under Rule 403 is narrowly circumscribed . . . Rule

14

403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992) (quotation and alteration omitted).

Here, the district court did not abuse its discretion in denying Leonard's motion for a mistrial based on the admission of the bag of suspected cocaine into evidence. The bag of suspected cocaine was not extrinsic evidence for several reasons. First, since Leonard was carrying the firearm and the bag at the same time, the bag was connected by time and circumstances to the charged offense of possessing a gun as a convicted felon. In addition, the presence of the bag of suspected cocaine provided a possible explanation for why Leonard was carrying a gun – Leonard could have carried the gun for use as protection during a drug purchase. In addition, it is also possible that the suspected cocaine contributed to Leonard's inebriated state, and this inebriated condition could have been the reason that Leonard drove erratically and continued to keep a gun on his person while being followed by the police. For these reasons, the bag of suspected cocaine was relevant to Leonard's motive and state of mind at the time of the offense, and therefore was not extrinsic evidence. Because the bag of suspected cocaine was not extrinsic evidence, it was not subject to the advance notice requirements set forth in Rule 404(b).

15

The admission of the bag of suspected cocaine into evidence also did not violate Fed.R.Evid. 403. The bag was relevant to Leonard's offense for the reasons discussed above. Moreover, the government introduced a chain of custody report for the bag. While the government did not establish that the substance in the bag tested positive for cocaine, Officers Amaran and Socarras testified that they only believed that the substance in the bag was cocaine, not that it actually was cocaine. Under these circumstances, the district court did not abuse its discretion in admitting the bag of suspected cocaine into evidence. Therefore, it also did not abuse its discretion in overruling Leonard's motion for a mistrial.

## V.

As noted above, we review a district court's decision not to grant a mistrial for abuse of discretion. Emmanuel, 565 F.3d at 1334. Allegations of prosecutorial misconduct, however, present mixed questions of law and fact that we review de novo. United States v. Campa, 529 F.3d 980, 992 (11th Cir. 2008), cert. denied, 129 S.Ct. 2790. We employ a two-part test to determine whether prosecutorial misconduct warranted the declaration of a mistrial. United States v. Foley, 508 F.3d 627, 636-37 (11th Cir. 2007). Under this test, we assess whether (1) the challenged remarks were improper and (2) if so, whether they prejudiced the defendant's substantial rights. Id. at 637. In determining whether a prosecutor's

16

statement to a jury constituted misconduct, we consider whether the remark constituted a fair response to an argument the defendant made in his own defense. See United States v. Alejandro, 118 F.3d 1518, 1524 (11th Cir. 1997) (holding that the prosecution did not engage in misconduct when, during its closing argument, it remarked on the defendant's failure to call an officer to testify in his defense, because the defendant had argued that the prosecution's case was weak due to its failure to present the testimony of this same officer).

The prosecutor's remark that Leonard was "not the most law-abiding felon" and was driving while inebriated did not rise to the level of prosecutorial misconduct because it was not improper. The jury had already heard evidence of Leonard's inebriation. Moreover, in his closing argument to the jury, Leonard suggested that the jury should acquit him because it was implausible that a convicted felon would have kept a gun on his lap while being followed by the police. Thus, the government's rebuttal argument that Leonard broke the law by driving while inebriated was a fair response to Leonard's argument that his actions were implausible. Because the prosecutor's remark was not improper, the district court did not err by declining to find that prosecutorial misconduct occurred. Because the court did not err by declining to find prosecutorial misconduct, it did not abuse its discretion in denying Leonard's motion for a mistrial based on the

prosecutor's remarks.

## Conclusion

Because we conclude that Leonard's arguments on appeal lack merit, we affirm as to all issues.

**AFFIRMED.**