[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15343
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-00029-CR-7-LSC-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT EDWARD FEE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 29, 2011)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Robert Edward Fee appeals his convictions for eight counts

of sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2251(a) and 2, and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Fee's charges arose out of photographs he and his wife, Rhonda Fee, took of Rhonda Fee's 12-year-old daughter, K.S. At trial, K.S. testified by two-way closed-circuit television. On appeal, Fee argues that this violated his Sixth Amendment right to confrontation and that insufficient evidence supports his convictions. After review, we affirm.

## I. FACTUAL BACKGROUND

### A. Two-Way Closed Circuit Television

The Child Victims' and Child Witnesses' Rights Statute provides procedures for a child-victim to testify in federal court via a two-way, closed-circuit television. 18 U.S.C. § 3509. If the government desires to submit such testimony, it must seek an order from the district court. Id. § 3509(b)(1)(A). The district court may order that the child's testimony be taken in this manner if: (1) "[t]he child is unable to testify because of fear"; (2) "[t]here is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying"; (3) the child suffers from some kind of mental or other "infirmity"; or (4) conduct by the defendant or his counsel causes the child's inability to testify. Id. § 3509(b)(1)(B).

2

The district court must support its ruling with specific findings on the record and may, in its discretion, question the child in a location other than the courtroom. Id. § 3509(b)(1)(C). The child's closed-circuit testimony must be viewable in court by the jury and the defendant, and the defendant must be able to communicate privately and contemporaneously with his counsel during the child's testimony. Id. § 3509(b)(1)(D).

## B. Evidentiary Hearing in District Court

After the government moved to allow K.S. to testify by two-way closed-circuit television, the district court held an evidentiary hearing.

Janie Plaxco, a mental health counselor who had treated K.S., testified, inter alia, that: (1) K.S. was scared of Defendant Fee and nervous to be in the same room with him because of the things he had done to her; (2) K.S. was scared of testifying in court; (3) K.S. admitted to Plaxco that she had self-mutilated her forearms because she was upset and said she was scared to go to court; (4) Plaxco observed the sores grow worse over time; (5) Plaxco once saw K.S. in an emergency session because K.S.'s anxiety appeared to be escalating and because K.S. had hit her grandmother after hearing Rhonda Fee's voice; (6) K.S.'s anxiety level was much more severe than that of a typical child preparing for testimony at trial and, in fact,

3

Plaxco had not encountered any child as nervous to testify in court as K.S.;[1] (7) on a scale of 1 to 10, with 10 meaning a child would need to be hospitalized, K.S.'s anxiety level was 8.5; (8) based on Plaxco's experience with K.S., Plaxco opined that K.S.'s testimony in front of Defendant Fee would be substantially likely to cause K.S. emotional trauma; and (9) allowing K.S. to testify by two-way closed-circuit television would lessen K.S.'s trauma.

Defendant Fee called Leah Belser, a forensic interviewer and therapist who had reviewed videotape of Plaxco's interviews of K.S. Belser testified that: (1) Plaxco's having conducted three, rather than one, interview may have contributed to K.S.'s anxiety; and (2) children may, in general, mutilate themselves for many reasons, including stress, anxiety or displacement from their family.

## C.    District Court's Findings

The district court granted the government's motion, finding Plaxco's testimony credible and reliable. The district court specifically credited Plaxco's testimony that she had "never had a child that's been this stressed out about coming in here and testifying," that K.S. would suffer trauma if she testified in court before Defendant Fee and that K.S. had mutilated herself out of fear of

---

[1]Plaxco had worked with children in private practice for fifteen years and at a health center for nine years. During that time, Plaxco had worked with "[h]undreds" of child victims of sex abuse and many self-mutilating children.

Defendant Fee. The district court found that K.S. would be unable to testify in the defendants' presence because of her fear of them and that, if K.S. were to testify in court, she would "close up" and would "not say a word other than muttering" due to the fear and emotional trauma of being in her mother's and stepfather's presence.

The district court explained that it would comply with the statutory requirements of § 3509(b)(1)(D) as to the manner in which K.S.'s televised testimony would be transmitted. The district court noted that, to ensure the requirements of the Confrontation Clause were met, K.S. would be sworn in the jury's presence, the jury would be able to view K.S.'s demeanor from the waist up and the defendants would be allowed to communicate contemporaneously with their counsel.

## D. Trial

At trial, K.S. was examined by attorneys for the government and the defense in the judge's chambers. K.S.'s sworn testimony was transmitted by two-way closed-circuit television into the courtroom, where the defendants, the judge and the jury could observe it. A video monitor in the judge's chambers displayed the courtroom, including the defendants and the judge. Before K.S. testified, the district court confirmed that K.S. could see the defendants on the monitor if she

looked at it. The district court administered the oath to K.S., asking several questions to ensure she understood what it meant to tell the truth. During K.S.'s testimony, the defendants were able to communicate with their counsel by cell phone.

## II. DISCUSSION

### A. Confrontation Clause Claim

After record review, we conclude that Defendant Fee's Sixth Amendment right of confrontation was not violated.[2]

Here, the district court complied with the procedures outlined in § 3509 and made the findings required by § 3509(b)(1)(B). To comport with the Confrontation Clause, the district court's § 3509(b)(1)(B) findings must satisfy the Supreme Court's test in Maryland v. Craig, 497 U.S. 836, 110 S. Ct. 3157 (1990). United States v. Yates, 438 F.3d 1307, 1313 (11th Cir. 2006) (en banc).[3]

Under Maryland v. Craig, after holding an evidentiary hearing, the trial court

_____

[2]We review de novo a defendant's claim that his Sixth Amendment rights were violated. United States v. Yates, 438 F.3d 1307, 1311 (11th Cir. 2006) (en banc).

[3]The Sixth Amendment's Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Yates, 438 F.3d at 1312 (quotation marks omitted). The right to a face-to-face confrontation is not absolute. Id. The Sixth Amendment "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." Id. (quoting Craig, 497 U.S. at 850, 110 S. Ct. at 3166).

6

must make a "case-specific" "finding of necessity," which includes a determination that: (1) the special procedure "is necessary to protect the welfare of the particular child witness who seeks to testify"; (2) "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant"; and (3) "the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify." 497 U.S. at 856, 110 S. Ct. at 3169 (quotation marks omitted).

Based on the evidence presented at the hearing, the government adequately demonstrated that having to testify in Defendant Fee's presence would have traumatized K.S., that her emotional distress would have been much more than mere nervousness or reluctance to testify and that conducting K.S.'s testimony by closed-circuit television was necessary to serve the public purpose of protecting K.S. from that emotional trauma. As in Craig, the reliability of the child's testimony was assured by the administration of the oath in front of the jury, by the jury's ability to view the child as she testified and by Fee's ability to cross-examine her.

Defendant Fee's contention that the district court did not make adequate findings is belied by the record. The district court emphasized Plaxco's expert

testimony that K.S. was more anxious to testify in court than any other child with whom she had worked. The district court further found that K.S. feared being in Defendant Fee's presence and would suffer emotional trauma if she testified in front of him. These findings satisfy the Craig test.

Contrary to Defendant Fee's contention, the district court was not required to make a specific finding that the case was "different from any other criminal prosecution" where it would be "convenient" for the government to present closed-circuit testimony. Fee borrows language from Yates, in which we concluded that the government's need to obtain testimony from witnesses in Australia using video conferencing did not outweigh the defendant's right to face-to-face confrontation. See 438 F.3d at 1315-16. However, we noted in Yates, that the case was "not a case like Craig where, in order to preserve the delicate psyche of the child who was the alleged victim of abuse, it was necessary" to allow the witness to testify outside the defendant's presence. Id. at 1317 n.10. In a case, such as this one, involving the testimony of an alleged child sexual exploitation victim, it is sufficient that the district court made the specific findings required by Craig and followed the procedures in § 3509.

We also reject Fee's argument that the district court improperly relied on Plaxco's expert testimony and disregarded the testimony of defense witness Belser.

8

The district court properly credited the testimony of Plaxco, rather than Belser, given that Plaxco had been counseling K.S. for about six months, had observed K.S. on multiple occasions and opined specifically about K.S.'s anxiety level and the effect testifying before the defendants would have on K.S. Belser, on the other hand, merely observed portions of a videotape of Plaxco's meetings with K.S. and made general statements as to other possible sources of anxiety.[4] In sum, Fee has not shown that the district court violated his Sixth Amendment right to confrontation by allowing K.S. to testify via two-way closed-circuit television.

## B.    Sufficiency of the Evidence

Fee argues that the district court erred when it denied his motion for judgment of acquittal following the close of the government's case and his post-verdict motion for a new trial. Specifically, Fee contends the government failed to prove that: (1) the pictures of K.S. contained "sexually explicit conduct"; or (2) the requisite intent to sexually exploit K.S. or to possess child pornography.[5]

---

[4]We also reject Defendant Fee's contention that the district court should have questioned K.S. before ruling on the government's motion. The district court stated that it did not see a need to directly question K.S., noting that Plaxco's testimony had been helpful in conveying K.S.'s feelings about testifying before the defendants. This decision was within the district court's discretion, see 18 U.S.C. § 3509(b)(1)(C), and Fee has not shown that the district court abused that discretion.

[5]We review de novo whether the record contains sufficient evidence to support the jury's verdict. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). In assessing the sufficiency of the evidence, the evidence is viewed "in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." Id.

9

To convict a defendant of sexual exploitation of a minor, the government must prove beyond a reasonable doubt that: (1) the defendant knowingly employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct; (2) the defendant did so for the purpose of producing a visual depiction of the conduct; and (3) the visual depiction was produced using materials that had traveled in interstate commerce. 18 U.S.C. § 2251(a). "Sexually explicit conduct" includes the "graphic or simulated lascivious exhibition of the genitals." Id. § 2256(2)(B)(iii).

To convict a defendant of possession of child pornography, the government must prove that: (1) the defendant knowingly possessed an item of child pornography; and (2) the item of child pornography was produced using materials that had traveled in interstate commerce. Id. § 2252A(a)(5)(B). "Child pornography" is defined as "any visual depiction, including any photograph . . . of sexual explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." Id. § 2256(8).

Viewing the evidence in the light most favorable to the government and the jury's verdict, a jury reasonably could have found beyond a reasonable doubt that Fee persuaded K.S. to engage in sexually explicit conduct for the purpose of producing photographs of that conduct and that Fee knowingly possessed the

10

sexually explicit photographs of K.S.

Pam Kirsch and John Barker with the Tuscaloosa County Sheriff's Office found eight photographs of K.S. in a drawer in Defendant Fee's bedroom bound together by a rubber band with a photograph of Defendant Fee naked. The eight photographs of K.S. included two of K.S. in a cast, three focused on K.S.'s genital area, one with K.S. spreading her genitals, one showing K.S. with her legs over her head and two of K.S. lying naked on a bed. The officers also found cameras in K.S.'s bedroom and bathroom and a television in Fee's bedroom that displayed K.S.'s bedroom and bathroom. During an interview, K.S. told Kirsch that Fee took the photographs and had put a Q-tip inside her vagina, which hurt her.

K.S. testified that Fee took the photographs, that she did not want him to take the photographs because "it was wrong" and that, because she kicked, her mother held her legs open while the photographs were taken. K.S. said that Fee watched her on the television while she was in her bedroom and bathroom. Fee also touched K.S. between her legs, when her clothes were both on and off, in a way she did not want him to touch her. Fee touched her "a lot" both inside and outside her genitals and caused her pain that felt "like a knife."

During this time, K.S., who has cerebral palsy, had two surgeries to correct her feet and was required to wear a cast for a long period of time. Between the two

11

surgeries, K.S. developed an infection between her legs. During a routine appointment, Dr. Karen Burgess diagnosed K.S. with a vaginal infection and recommended bathing and use of Vaseline. Dr. Burgess did not recommend that Fee take pictures of K.S.'s vagina. K.S. acknowledged that she used a cream for the infection, that she had trouble bathing by herself and needed help applying the cream, that Defendant Fee sometimes helped her bathe or apply the cream and that the defendants showed her the pictures because they said she was not bathing correctly.

Defendant Fee testified and admitted he took the photographs of K.S. Defendant Fee maintained that he took the pictures because K.S. had an infection and was having trouble keeping herself clean. He and his wife tried to explain to K.S. how to keep her vaginal area clean. Fee denied taking the pictures to make child pornography. Fee said he put the camera in K.S.'s bathroom to make sure she bathed fully and did not fall when getting out of the tub, and he put the camera in K.S.'s bedroom to make sure she was not "goofing off" and was getting dressed.

In challenging the sufficiency of the evidence, Fee relies on his testimony that he took the pictures only to teach K.S. how to clean herself.[6] However, the

---

[6]We may consider Fee's testimony because he waived any objection to the district court's denial of his initial Federal Rule of Criminal Procedure 29 motion for a judgment of acquittal by testifying in his defense. See United States v. Alejandro, 118 F.3d 1518, 1520-21 (11th Cir. 1997).

jury was free to discredit Fee's testimony, which it clearly did.  See United States

v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006) (explaining that credibility

questions are for the jury to resolve and we will assume the jury answered them in

a manner that supports the jury's verdict).  If the jury disbelieves a defendant's

testimony, the jury may consider that testimony as substantive evidence of his

guilt.  United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).  This rule applies

with special force when the issue involves the elements of intent or knowledge.  Id.

at 315.

We reject Fee's claim that K.S. corroborated his innocent motive.  K.S.

testified that Fee and her mother told her they took the pictures to show her how to

properly clean herself, but she also said that she did not want Fee to take them

because it was wrong, that she kicked when the pictures were taken, that her

mother held her legs apart and that Fee touched her between her legs "a lot" and

that it hurt.  Moreover, Fee kept the pictures bound together with a picture of

himself naked and watched K.S. on a television in his bedroom while K.S. was in

her bedroom and bathroom.

The jury could reasonably conclude from the totality of the evidence that

Fee's motive for taking the pictures was not innocent, and that he used K.S.'s

vaginal infection as an excuse to produce pictures depicting K.S. engaged in

13

sexually explicit conduct. The jury also could reasonably conclude, given the nature of the depictions of K.S. and the focus on her genitals, that the photographs showed "sexually explicit conduct" and that Fee knowingly possessed them.

Accordingly, we conclude that there was sufficient evidence supporting Fee's convictions.[7]

**AFFIRMED.**

---

[7]On appeal, Defendant Fee does not challenge any advisory guidelines calculations or his ultimate sentences.

14