[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11582
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00436-AT-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIA DE JESUS ZORIANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 12, 2020)

Before BRANCH, GRANT, and FAY, Circuit Judges.

PER CURIAM:

Maria Zoriano appeals her convictions for two counts each of identification document fraud and Social Security fraud, arguing that the district court abused its discretion by refusing to give her requested jury instructions on the good faith defense and the definition of the term "counterfeit." After a thorough review of the record and the parties' briefs, we affirm.

I.

A federal grand jury returned an indictment charging Zoriano with two counts of identification document fraud, in violation of 18 U.S.C. § 1028(a)(2) and (c)(1) (Counts 1 and 3), and two counts of Social Security fraud, in violation of 42 U.S.C. § 408(a)(7)(C) (Counts 2 and 4). Specifically, the first superseding indictment alleged that in December 2015, Zoriano knowingly transferred "a fraudulent Resident Alien Card in the name of 'L.P'" and "a counterfeit Social Security Card in the name of 'L.P.,'" knowing that the documents were produced without lawful authority (Count 1), and knowingly possessed the counterfeit Social Security card in the name of L.P. with the intent to sell it (Count 2); and that in December 2016, Zoriano knowingly transferred "a fraudulent Resident Alien Card in the name of 'J.G.'" and "a counterfeit Social Security Card in the name of 'J.G.,'" knowing that the documents were produced without lawful authority (Count 3), and knowingly possessed the counterfeit Social Security card in the

2

name of J.G. with the intent to sell it (Count 4).  Zoriano pleaded not guilty and proceeded to trial.

At trial, a government informant testified that in December 2015, Zoriano agreed to sell him a permanent resident card (or "green card") and a Social Security card for $100.  Zoriano asked him for the name, photograph, date of birth, and nationality to use on the identification documents, which he provided.  The informant gave Zoriano a made-up name (Luis Perez) and date of birth, and a photograph (which looked nothing like the informant) that a government agent provided.  The informant met Zoriano at her apartment and gave her $100 in exchange for a fake green card and fake Social Security card, both in the name Luis Perez.

A second government informant testified that on November 30, 2016, he contacted Zoriano and arranged to buy a green card and Social Security card.  The informant provided a photograph of himself, his nationality (Mexican), and a made-up name (Juan Garsia) and birth date.  The next day, he met with Zoriano and she sold him a fake green card and a fake Social Security card, both in the name Juan Garsia.

The government also called Ana Gonzales, who testified that she prepared phony identification documents for Zoriano to sell.  According to Gonzales, Zoriano would request green cards, Social Security cards, or driver's licenses and

provide the necessary information for Gonzales to make those documents. Zoriano told Gonzales that her customers needed the documents to work.

The false green cards and Social Security cards that Zoriano sold looked like the real thing, at least at first glance. The green cards had "United States of America Permanent Resident" printed at the top, along with a United States Citizenship and Immigration Service number, dates of residency and issuance, a fingerprint, a photograph, and demographic information that would appear on a real green card, including the individual's name, date of birth, and nationality. The fronts of the Social Security cards bore the emblem of the Social Security Administration, the name provided by the informant, and a number in the familiar format of Social Security numbers. The backs of the cards bore an address for the Social Security Administration and a number printed in red that resembled the authentication number printed on real Social Security cards.

On closer inspection, however, the documents differed in some respects from real ones. The lettering on the green cards was misaligned in places and appeared faded or smeared, and there were typographical errors on the backs of the Social Security cards.

Zoriano's theory of defense at trial was that she obtained false documents for her clients so that they could get jobs and pay taxes. She argued that the

4

documents were not intended to fool her clients' prospective employers, who would or should know that the documents were fake by looking at them.

The jury found Zoriano guilty of all charges. The district court sentenced her to 15 months in prison and three years of supervised release. This is her appeal.

## II.

Zoriano argues that the district court abused its discretion by refusing to give her proposed jury instructions on the good faith defense and the definition of the term "counterfeit" as it was used in the indictment. This Court reviews a district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Martinelli*, 454 F.3d 1300, 1309 (11th Cir. 2006). A district court abuses its discretion in refusing such a request where: (1) the instruction correctly stated the law; (2) the instruction's subject matter was not substantially covered by other instructions; and (3) the refusal seriously impaired the defendant's ability to defend herself. *Id.* "The district court has broad discretion in formulating jury instructions as long as those instructions are a correct statement of the law." *United States v. Garcia*, 405 F.3d 1260, 1273 (11th Cir. 2005).

## A.

Zoriano's requested good faith charge, a modified version of this Circuit's pattern instruction, stated in part that good faith "is a complete defense to the

5

charges in the indictment since good faith on the part of the Defendant is inconsistent with intent to defraud or willfulness which is an essential part of the charges." The proposed charge further stated that the government "must establish beyond a reasonable doubt that Ms. Zoriano acted with specific intent to defraud as charged in the indictment."

Zoriano argues that she was entitled to have this instruction given to the jury because it described her theory of defense, which was that she did not intend the false documents she sold to deceive anyone. She argues that the evidence supported her requested instruction because the fake documents had multiple flaws that made it obvious that they were not real.

It is true that good faith "is a complete defense to the element of intent to defraud," so that where intent to defraud is an element of the crime charged, the defendant is entitled to a jury instruction on the good faith defense if there is evidence to support it. *United States v. Williams*, 728 F.2d 1402, 1404 (11th Cir. 1984). But intent to defraud is not an element of the crimes charged against Zoriano. "Accuracy in a requested instruction on a theory of defense requires that there be some basis both in law and in the evidence to support the instruction." *United States v. Morris*, 20 F.3d 1111, 1116 (11th Cir. 1994).

Counts 1 and 3 of the indictment charged Zoriano with violations of 18 U.S.C. § 1028(a)(2) and (c)(1). Those subsections provide that whoever

6

"knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority" is guilty of identification document fraud if "the identification document, authentication feature, or false identification document is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance or the document-making implement is designed or suited for making such an identification document, authentication feature, or false identification document."  18 U.S.C. § 1028(a)(2) & (c)(1).

To prove that Zoriano violated these provisions as charged in the indictment, the government was required to present evidence that (1) Zoriano knowingly transferred an identification document, authentication feature, or false identification document; (2) the document or feature was or appeared to have been issued by or under the authority of the United States; and (3) Zoriano transferred the document or feature knowing that such document or feature was produced without lawful authority.  *Id.*; *see United States v. Alejandro*, 118 F.3d 1518, 1522 (11th Cir. 1997).  The district court included these elements of the offense in its jury charge without objection by Zoriano.

Similarly, 42 U.S.C. § 408(a)(7)(C) provides that a person who "knowingly alters a social security card issued by the Commissioner of Social Security, buys or

sells a card that is, or purports to be, a card so issued, counterfeits a social security card, or possesses a social security card or counterfeit social security card with intent to sell or alter it" is guilty of a felony.  To prove that Zoriano violated this subsection as charged in Counts 2 and 4 of the indictment, the government was required to present evidence showing that she (1) possessed a counterfeit Social Security card; (2) with the intent to sell it to another for something of value; and (3) did so knowingly.  Again, the district court instructed the jury on these elements of the crime without objection by Zoriano.

Neither statute requires proof of intent to defraud as an element of the offense.  All that is required is that the defendant act knowingly—that is, with knowledge that the identification document was produced without lawful authority or that the Social Security card is counterfeit.

Zoriano argues that an instruction on the good faith defense was appropriate with respect to the charged violations of § 408(a)(7)(C) because the intent to deceive is inherent in the crime of selling counterfeit documents, citing *Souza v. Ashcroft*, 52 Fed. App'x 40 (9th Cir. 2002) (unpublished).  In *Souza*, the Ninth Circuit affirmed the denial of the petitioner's application for naturalization on the ground that his conviction for aiding and abetting the sale of a counterfeit Social Security card was a crime of moral turpitude, explaining that although "§ 408(a)(7)(C) does not explicitly include intent to defraud as an element of the

8

crime, fraud is inherent in the crime as there is an intent to pass off counterfeit items as genuine." 52 Fed. App'x at 41.

We agree that dishonesty is inherent in the act of selling a counterfeit Social Security card that the defendant knows is fake. But the fact that the intent to deceive is implicit in the crime does not mean that the government is required to prove such intent as an element of the offense. Indeed, Congress conspicuously omitted the requirement that the defendant act with the intent to deceive from § 408(a)(7)(C), while § 408(a)(7)(A) and (a)(7)(B) both explicitly require such intent. *See* 42 U.S.C. § 408(a)(7)(A)–(C). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in excluding the particular language." *United States v. Henry*, 111 F.3d 111, 114 (11th Cir. 1997) (citation omitted).

Because intent to defraud is not an element of the crimes charged in Zoriano's indictment, good faith is not a complete defense to those charges. Thus, the district court did not abuse its discretion in declining to give Zoriano's requested good faith instruction because the instruction was not a correct statement of the law.

9

B.

The district court gave the following jury instruction defining the term "counterfeit Social Security Card" as it was used in the indictment:  "A counterfeit social security card is a card which resembles sufficiently a real card that it could deceive an honest intelligent person who was unsuspecting concerning it." Zoriano requested that the district court modify this instruction to replace "it could deceive" with "is calculated to deceive," arguing that such language better represented her theory of defense—that the phony Social Security cards were of such poor quality that they were obviously not intended to deceive anyone.

But "[c]alling a proposed instruction a 'theory of defense' does not automatically require that it be given in those words.  If the instruction does not concern factual issues properly before the jury or if it is otherwise confusing, it need not be given at all."  *Williams*, 728 F.2d at 1404 (citation omitted).  As we have explained, the government was not required to show that Zoriano acted with an intent to deceive in order to prove that she sold counterfeit Social Security cards as charged in the indictment.  Including Zoriano's requested language could easily have confused the jury by implying that proof of such intent was required.  And the charge given adequately encompassed Zoriano's theory that the cards were obvious fakes by explaining that a counterfeit card must sufficiently resemble a real one "that it could deceive an honest intelligent person who was unsuspecting

10

concerning it." The district court therefore did not abuse its discretion by refusing to give the instruction in the form that Zoriano requested.

## III.

For the reasons discussed above, the district court did not abuse its discretion by refusing to give Zoriano's requested jury instructions on the good faith defense and the definition of the term "counterfeit." We therefore affirm Zoriano's convictions and sentences.

**AFFIRMED.**